Brower, Appellant, *v.* Brower.

Argued March 12, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH and ROSS, JJ.

*Paul Yermish,* with him *Joseph Ominsky,* for appellant.

*Gilbert Cassidy, Jr.,* for appellee.

OPINION BY RHODES, J., July 19, 1945:

The libellant filed his libel for a divorce a vinculo matrimonii on November 24, 1937, in which it was averred (a) that respondent had by cruel and barbarous treatment endangered the life of libellant; (b) that respondent had offered such indignities to the person of the libellant as to make his condition intolerable and his life burdensome; and (c) that respondent had committed wilful and malicious desertion and absented herself from the habitation of her injured and innocent

spouse, without reasonable cause, during the period of two years.

The libel was amended to allege the commission of adultery by respondent with one William R. Himerdinger on May 2, 1938, and on May 7, 1938.

The matter was referred to a master who, upon a record of 1041 pages of testimony, filed a report recommending the granting of the prayer of the libel on the grounds of desertion and adultery.

The court below agreed with the conclusions of the master to the extent that the evidence was insufficient to support the charges of cruel and barbarous treatment and indignities to the person. Our independent examination of the record brings us to the same conclusions as the court below. The libellant, having appealed from the decree of the court dismissing his libel, does not contend that the evidence presented upon his behalf is sufficient to support a decree in divorce on the ground of cruel and barbarous treatment or on the ground of indignities to the person. Exceptions filed by respondent to the report of the master recommending that a divorce be granted to libellant on the grounds of desertion and adultery were sustained.

We are in agreement with the court below that the charge of desertion has not been sustained by libellant. In this connection the master who made a recommendation that a divorce be granted on this ground said: "The evidence is sparse, especially supporting evidence, on the fact of desertion by the respondent on October 16, 1933, and comes close to being an allegation on the part of the libellant and a flat denial on the part of the respondent."

The parties were married on September 3, 1922, and for a few months resided at Atlantic City, N. J. Since that time they have resided continuously in Philadelphia at various locations. One child, a son, was born on June 9, 1924. That the parties were incompatible is quite obvious from a reading of this record. There

had been a temporary separation on an occasion prior to October 16, 1933, due, as respondent testified, to libellant's treatment of her. Libellant testified that they could not get along together, and his admitted conduct with another woman was not conductive to marital harmony. Libellant testified that respondent left their home at 3939 Claridge Street, Philadelphia, on October 16th; that when he returned from work, about 5:30 P.M., his clothes had been removed from the house and placed in his automobile; and that he then obtained a room at 3891 L Street, with a Mrs. Laidley, who also testified to the latter fact. We are not impressed with his alleged offers to respondent to return. Respondent, however, denied libellant's charge, and alleged that he left their home; that when she returned from work his clothes had been removed from the house; and that she had no knowledge of his intention to leave. Respondent worked from the time of their marriage in 1922. Following this separation the parties did not resume cohabitation. The marriage contract will not be dissolved on a doubtful balance of the evidence nor upon unsubstantial inferences. To accomplish this result there must be a presentation of a clear and satisfactory case by the libellant on which the determination of the court may be confidently rested. *Twaddell v. Twaddell,* 95 Pa. Superior Ct. 429, 432; *McKrell v. McKrell,* 352 Pa. 173, 183, 42 A. 2d 609. Libellant has not established a case on the charge of desertion of sufficient merit to warrant the granting of a divorce.

Libellant charged the respondent with commission of adultery with one William R. Himerdinger, and the specific dates alleged were May 2, 1938, and May 7, 1938. The testimony relied upon to substantiate the charges came from two paid detectives. Such testimony will be carefully scrutinized and is frequently open to suspicion. *Diehl v. Diehl,* 87 Pa. Superior Ct. 545, 549. From a position across the street they said they observed respondent's house at 3123 Sterling Street. One testi-

fied to three occasions, to wit, May 2, 3, and 7, 1938; the other was present on two occasions, May 2 and 7. There was much testimony introduced as to the ability of these witnesses to observe who was in respondent's living room at the various times. They testified that they observed the corespondent with respondent in the living room. On one or two occasions the son of libellant and respondent was present. On the third occasion respondent and corespondent went out in corespondent's automobile and returned about 12:30 A. M. The witnesses testified that on these respective occasions they stayed until two or three o'clock in the morning, and did not see corespondent leave respondent's residence, and that the lights were out. Respondent denied any impropriety with the alleged corespondent, and her testimony and that of some witnesses was contradictive of that of the detectives. It appears that corespondent at the time had rented a garage in the rear of respondent's home. The automobile trip by corespondent and respondent was explained by the latter. It is unnecessary to go into any detailed discussion as to the height and location of the properties on either side of the street upon which respondent's home was located, or the various contentions as to the ability of the detectives to see those things to which they testified. Much testimony is devoted to these matters. The only possible inference that adultery had been committed by corespondent and respondent is one which might arise from the testimony of the detectives relative to the presence of corespondent in respondent's home with the lights extinguished late in the evening. Corespondent may or may not have left before the lights were extinguished. At least nothing occurred prior thereto to sustain a finding of adultery. It is significant that these observances were made five years after the separation of libellant and respondent. We recognize that adultery need not be, and usually cannot be, established by direct proof, but to sustain the charge the circum-

stances must be such as to lead the guarded discretion of a reasonable and just man to a conclusion of guilt. *Ammann, v. Ammann,* 90 Pa. Superior Ct. 25, 28; *Matchin v. Matchin,* 6 Pa. 332, 338. If we accept the testimony of the detectives as furnishing proof of opportunity on the dates to which they testified, we find no convincing proof of an adulterous inclination or disposition on the part of either respondent or co-respondent. In an adultery charge proofs to lead to a conclusion of guilt must be clear and satisfactory. We are not impressed with the testimony which libellant contends is corroborative of his detectives. Reliance in this respect is placed primarily upon the testimony of the young son of libellant and respondent. He testified falsely either before the master or in the criminal case in the municipal court wherein respondent and core-pondent were prosecuted for this alleged adultery. This prosecution resulted in an acquittal of the defendants.[1] The court below in its opinion said: "The evidence in support of the charge of adultery is, in our opinion, of the same character offered by the libellant in support of the charge of desertion." Mere suspicion of misconduct is not sufficient; suspicion does not take the place of evidence. *Callander v. Callander,* 82 Pa. Superior Ct. 14, 16.

Pertinent to the inquiry as to whether a divorce should be granted to libellant on the ground of adultery is the fact that the record discloses that the libellant failed to follow the mandatory provision of The Divorce Law of May 2, 1929, P. L. 1237, §38, as amended by the Act of May 25, 1933, P. L. 1020, §1, 23 PS §38. This section provides as follows: "In any case for divorce on the ground of adultery, the libellant shall

---

[1] We recognize that the criminal prosecution is no bar to the present action, and that the judgment rendered therein has no probative value in these proceedings beyond the mere fact of its rendition. See *Wilson v. Wilson,* 100 Pa. Superior Ct. 451, 458; *Com. v. Funk,* 323 Pa. 390, 400, 186 A. 65.

432

cause to be served personally, or by registered mail addressed to the last known post office address, a notice on any corespondent named and identified in the libel, and, where such corespondent is named and identified first in the testimony, then such notice shall be given before the testimony is closed, and an opportunity afforded such corespondent to be heard. A notice sent by registered mail, addressed to the last known post office address of the corespondent, shall be equivalent to personal service of such notice. Such notice shall set forth that such person was named in the proceedings as corespondent, and designate the time and place of hearing, and shall be served at least ten days previous to the hearing. Proof of the personal service of such notice, or the mailing of such notice to the last known post office address of the corespondent, shall be filed in the office of the prothonotary." Libellant failed to comply with the mandatory provision of this section. The libel having been filed on November 24, 1937, was amended on March 25, 1941, to include the charge of adultery. The first meeting before the master was held on March 19, 1942. The corespondent was named and identified in the libel, as amended, and in the bill of particulars filed by libellant on February 6, 1942. Libellant did nothing to comply with section 38 of The Divorce Law until August 4, 1942, when a notice was mailed to the corespondent at the Philadelphia State Hospital. The notice was received at the hospital by a stranger to the proceedings, and it was not mailed until nine days previous to the hearing on August 13th of which it sought to advise the corespondent. At that time the case had already proceeded to seven of the fourteen hearings before the master. We need not pass upon the sufficiency of the notice, as it was not given in compliance with the act of assembly. Corespondent died in August, 1942, but this does not inure to the benefit of libellant and mitigate his failure to comply with the mandatory provision of the act. Corespondent was en-

titled to notice in accordance with the procedure prescribed by the act, and thus afforded an opportunity to be heard. See *Derry Township School District v. Barnett Coal Co. et al.,* 332 Pa. 174, 177, 2 A. 2d 758. Such charges are easily made and sometimes recklessly so; a purpose of the quoted section of the act is to afford protection to the reputation of persons named as corespondents in divorce cases. Those who seek the benefits of the divorce law are obliged to proceed in the manner which the legislature has prescribed. In the present case libellant failed to "cause to be served personally, or by registered mail addressed to the last known post office address, a notice [to the] corespondent named and identified in the libel." Corespondent was alive and available at the time the libel was amended. In these circumstances a decree in divorce on the ground of adultery could not now be entered. See *Nace v. Nace,* 16 D. & C. 528; *Redcay v. Redcay,* 78 Pittsburgh Legal Journal 605.

Decree of the court below is affirmed, at the cost of appellant.