Commonwealth, Appellant, *v.* Bozzelli.

Argued September 8, 1958. Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WAT-
KINS, JJ.

*Richard S. Lowe,* Assistant District Attorney, with
him *Bernard E. DiJoseph,* District Attorney, for ap-
pellant.

*Leon H. Fox, Jr.,* with him *Fox and Fox,* for appel-
lee.

OPINION BY GUNTHER, J., November 14, 1958:

This appeal is by the Commonwealth of Pennsyl-
vania from the action of the court below in granting

a motion in arrest of judgment, under the authority of the Act of 1951, June 15, P. L. 585, section 1, 19 P.S. section 871, after a jury returned verdicts of guilty of involuntary manslaughter and operating a motor vehicle after suspension or revocation of operating privilege. The defendant, Albert Bozzelli, was also charged with operating a motor vehicle while under the influence of intoxicating liquor, but a demurrer to this charge was sustained by the court below, and this charge and the action taken thereon is not before us on this appeal.

On the morning of July 15, 1956, Vincent Malandra met his death about 1:55 A.M. as a result of a violent automobile crash in which he was an occupant. Earlier on the evening of July 14, 1956, the defendant, Vincent S. Malandra, James Chiancone, Alfred Leno, John Jarrell and Francis LaCava met at defendant's home outside Mont Clare in Montgomery County and proceeded to several bars and clubs in a two-door Packard sedan owned by defendant's wife. Just prior to the collision, this car was traveling in an eastwardly direction on Walnut Street in Mont Clare when the automobile went out of control at a point approximately 270 feet westwardly from the home of one William Blatt, and, after careening first to the left and off the road and onto the shoulder and then to its right, came into a violent head-on collision with a large tree immediately adjacent to the roadway and in front of Mr. Blatt's home. The decedent lost his life due to a fracture of the cervical vertebrae, a crushed chest with fracture of the sternum and subarachnoid hemorrhages.

Within a very short time after the impact, Mr. Blatt arrived on the scene and found one man, who was not identified, lying in the center of the highway, Alfred Leno seated in the center front with the en-

gine of the automobile forced back between his legs, the defendant lying with his head and shoulders upon the highway but with his feet inside the car on the driver's side and near the pedals, and the remaining three men were found lying in the back of the car. Decedent was stretched across the back seat of the car, with his head jammed down in between the rear seat and his body was perpendicular to the steering wheel which was badly bent. This witness testified that he first looked in at the right door which was closed. Leno was conscious and asked for help to get out of the car. The witness then went to the left side of the car where he found the defendant through the open left door. The front seat was pushed back toward the rear seat so that approximately two to three feet clearance remained between the front and rear seats.

The coroner who performed the autopsy concluded that the injuries received by the decedent were "the common steering wheel injury of a body."

Some hair fibers were found imbedded in the steering column. The State Police officers who arrived on the scene shortly after the accident removed these hairs and, together with other hair fibers obtained at the hospital from defendant's head, were transmitted for examination. The examination disclosed that the hair removed from the steering column and that furnished from the head of the defendant came from one and the same person. However, the doctor who described defendant's injuries did not mention any injury to the head. The physical injuries of the defendant consisted of a laceration on the right side of the face, extending down along below the right eye, across the right nostril, and right lip and mouth, laying the whole side of the face open as one big gash.

There were several other small lacerations of the upper extremities and he also had a crushed upper right chest due to multiple fractures of the second, third, and fourth ribs.

The Commonwealth clearly proved that defendant's operating privileges were suspended as of April 28. 1955 for an indefinite period. The Commonwealth also called Francis LaCava who testified at the trial that the decedent was driving the car. Upon a plea of surprise, the assistant district attorney was permitted to cross-examine him and elicited from him the fact that in a prior sworn statement the witness stated that the defendant was the driver of the car. This witness was immediately charged with perjury (out of the hearing of the jury) and the trial judge, acting as a committing magistrate, ordered him in custody.

Upon conclusion of the Commonwealth's case, defendant demurred to the evidence on all charges. The demurrer on the two charges here involved were overruled and the defendant and his witness offered testimony. Upon the conclusion of the case, the jury returned with verdicts of guilty and thereafter motions for a new trial and in arrest of judgment were filed. The court below granted the motion in arrest of judgment, discharged the defendant and dismissed the case. The Commonwealth thereupon took this appeal contending that sufficient evidence was produced to sustain the charges. Exception was also taken to the adjudication of the court below that it committed error in its charge relating to the testimony of the witness LaCava.

The Commonwealth's case rested entirely on circumstantial evidence. The Supreme Court, in *Commonwealth v. Clinton*, 391 Pa. 212, 137 A. 2d 463, said that "Where conviction must be based on circumstan-

tial evidence, as it must here, the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all." Such conviction cannot be based wholly on inferences, suspicions and conjectures. *Commonwealth v. Bausewine*, 354 Pa. 35, 46 A. 2d 491. This the Commonwealth concedes but it urges that sufficient evidence was adduced to permit the case to go to the jury and that the jury's finding should not now be disturbed by the granting of a motion in arrest of judgment. It also urges, quite properly, that on such a motion, on the grounds that the evidence is insufficient to sustain the charge, the sufficiency of the evidence must be tested according to the Commonwealth's evidence. *Commonwealth v. Wright*, 383 Pa. 532, 119 A. 2d 492; *Commonwealth v. Brown*, 184 Pa. Superior Ct. 494, 136 A. 2d 138; *Commonwealth v. Elias*, 186 Pa. Superior Ct. 137, 140 A. 2d 341. Circumstances, in order to warrant conviction, must establish guilt, not necessarily beyond moral certainty, nor as being absolutely incompatible with innocence, but at least beyond a reasonable doubt. *Commonwealth v. Streuber*, 185 Pa. Superior Ct. 369, 137 A. 2d 825. Such circumstances proved should be such as reasonably and naturally justify an inference of guilt of the accused and should be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt.

What then are the circumstances proved in this case, both as to quality and volume, to overcome the presumption of innocence? The Commonwealth relies heavily on the position of the bodies involved in the accident immediately after the collision. The difficulty with this theory of the case is that at least four occupants of the car, other than the defendant, could have driven the car. In a violent collision such

as here involved, who can say how and where human bodies may be tossed and come to rest? If we consider the position of the defendant alone after the accident, there could be an inference that he was the driver of the car. It could be possible that after the impact, he slid out partially from the opened left door. But what about the man who was found clear of the car and practically in the middle of the road? It is just as reasonable to infer (considering that this was a two-door sedan and the only door open being on the left side) that he was thrown out of the car first and that, therefore, he must have been the driver. Furthermore, considering the nature of the injuries of the deceased and the testimony of the coroner to the effect that his injuries were "the common steering wheel injury of a body," he could have been the driver. But the deceased was found in the rear seat of the car. Considering the testimony of the State Police officer that the front seat of the car was pushed back by the impact, it is not unreasonable to infer that, after the impact, his body was thrown back and that the bodies of the other rear seat occupants were thrown against the deceased in causing him to be wedged in the position in which he was found.

The position of Alfred Leno would seem to indicate that he occupied the front seat prior to the collision. What were his injuries and where was he just prior to the impact? If he was not the driver, who else was seated in the front seat? The evidence after the impact would indicate that three men occupied the back seat and, therefore, three men occupied the front seat. It is not reasonable to assume that only two men occupied the front seat and four men occupied the rear seat. And if that were so, what happened to the fourth man in the rear seat? If it were not so, which three men occupied the front seat and which three the

back seat? These and a dozen other questions demonstrate the surmise and conjecture employed in order to pinpoint the defendant as the driver. These and other questions raised a serious doubt as to who actually was the driver. The doubt, of course, is for the jury unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820; *Commonwealth v. Elias*, 186 Pa. Superior Ct. 137, 140 A. 2d 341; *Commonwealth v. Grosso*, 169 Pa. Superior Ct. 606, 84 A. 2d 239. We conclude, therefore, that this evidence was so weak and inconclusive that no probability of fact can be drawn from them.

The second chain of circumstances involved the hair particles which were identified as belonging to the defendant. This of itself is of little probative value unless the Commonwealth also attempted to prove the nature of the injuries received by the defendant. This proof was totally lacking in the Commonwealth's case, without which, again, the jury was permitted to speculate that the defendant's head must have hit the steering wheel or steering column with force sufficient to embed the hair particles. However, it is common knowledge that hair follicles of the owner of a car as well as that of members of his family may be found in any part of the car, including the steering wheel.

Finally, the Commonwealth relies upon the testimony of the witness LaCava who had to be impeached and who later was charged with perjury. At the trial, he testified that the deceased was the driver of the car. This testimony was destroyed by impeachment, but by the same token it is difficult to see how his earlier testimony becomes credible or worthy of belief. But there is a more serious objection to this type of testimony. For whatever it was worth, it was not

substantive testimony but, rather, impeaching testimony. As such it is not affirmative proof of the facts set forth in the prior statement. *Commonwealth v. Smith,* 178 Pa. Superior Ct. 251, 115 A. 2d 782. Such testimony only demonstrated that the witness has committed perjury but does not prove the affirmative required to be proved by the Commonwealth.

A review of the record discloses one other important fact. The police officers investigating this collision, upon interviewing the defendant as well as the other occupants in the car testified that when they inquired as to who drove the car, James Chiancone testified that the deceased drove and when they inquired of the defendant, he stated that he did not drive the car. In the Commonwealth's own testimony, therefore, we find testimony indicating that the defendant did not drive the car. Where such testimony develops inconsistent proofs, such is sufficient alone to raise a reasonable doubt as to the guilt of the accused and the presumption of innocence prevails.

We conclude, therefore, that the Commonwealth's evidence was insufficient to sustain the charges and the motion in arrest of judgment was properly entered by the court below. We, therefore, need not consider the second question raised as to whether the trial court properly charged relating to the testimony of the witness LaCava.

Order affirmed.