### Commonwealth *v.* Donald et al., Appellants.

Argued April 12, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (MONTGOMERY, J., absent).

*Herbert Jacobson,* for appellants.

*William Claney Smith,* Assistant District Attorney, with him *Edward E. Fagan,* Assistant District Attorney, and *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY RHODES, P. J., June 15, 1960:

These two appeals are by defendants, Thomas G. Donald and Barbara L. Lewis, from convictions and sentences on indictments charging each with the crime of adultery committed on various occasions between December 28, 1958, and January 21, 1959. See Act of

June 24, 1939, P. L. 872, §505, 18 PS §4505. Both defendants are married but they were separated from their respective spouses at the time they allegedly committed adultery with each other. The prosecutions were instituted at the instance of Donald's wife and her uncle.

Defendants were tried before a judge of the Court of Quarter Sessions of Allegheny County sitting without a jury. At the conclusion of the Commonwealth's evidence defendants' demurrers were overruled. Both defendants testified in their defense and presented other evidence including that of character witnesses. Defendants' motions in arrest of judgment and for a new trial were refused. Each defendant was adjudged guilty and sentenced to pay the costs and a fine of $100, and placed on probation for one year. On appeal to this Court they contend that the evidence was insufficient to warrant their conviction, and that error in the trial court's remarks necessitates a new trial. Defendants' principal contention is that the evidence of the criminal acts charged, being wholly circumstantial and based entirely on the testimony of paid detectives, is insufficient to sustain their convictions. More specifically, defendants contend that the Commonwealth, in relying upon the so-called "inclination and opportunity rule" to establish the acts of adultery failed to show inclination or an adulterous disposition on the part of those charged with the offense. Viewed in a light most favorable to the Commonwealth, the evidence established that Donald, thirty-five years of age, was employed as an architect in the City of Pittsburgh, and that he had been separated from his wife for a period of one and a half years prior to the charges here made. Defendant Barbara L. Lewis was employed as a secretary by the National Polio Foundation having offices in Pittsburgh, and had been separated from her husband since October, 1958. Donald had known

Mrs. Lewis for about four years, as they were employed in the same office building; they saw each other frequently between October, 1958, and the raid and arrest at the apartment of Mrs. Lewis at 10:30 p.m. the evening of January 21, 1959. In November, 1958, the services of a private detective were employed to check the activities of Donald based upon a rumor that he was living with a married woman. The surveillance of Donald commenced on December 27, 1958, and ended on January 21, 1959, the night of the arrest. During this period defendants were under surveillance on various occasions. On the evening of January 21, 1959, having a warrant charging defendants with adultery, a private detective, Nicholas Carter, his assistant, Dona Brand, Mrs. Thomas Donald, defendant's wife, Ellsworth Jordan, an uncle of Mrs. Donald, and a constable went to the building where Mrs. Lewis had an apartment. The raiding party gained entrance to the building and asked to be directed to the Lewis apartment. They knocked on the door and were immediately let into the apartment by Mrs. Lewis. Donald was fully clothed with the exception of his coat. Mrs. Lewis was wearing a housecoat or duster, a slip, and a pair of slippers; her hair was in curlers. In the apartment they found a suburban coat, a pair of slacks, and a sport shirt belonging to Donald. A photograph was taken of defendants, which showed no improper dress or conduct. Ellsworth Jordan, uncle of Mrs. Donald, testified that the raiding party waited from 10 p.m. until 10:30 p.m. "to give them [defendants] time to get in bed together." Their expectations were not realized.

The trial court concluded that the charge of adultery was established by the Commonwealth on two different occasions. One was on the night of Monday-Tuesday, December 29 and 30, 1958, and the other on the night of Friday-Saturday, January 16 and 17, 1959.

Dona Brand, the paid assistant of private detective, Nicholas Carter, was the chief witness for the Commonwealth. She testified that she had the defendants under surveillance on ten different occasions. She testified generally that she saw the defendants enter the apartment house of Mrs. Lewis; that on several occasions Donald's car was still outside the building when she departed; and that she saw defendants kiss on two occasions. Defendants were also frequently in the company of each other, shopping and dining. Donald had a key to Mrs. Lewis's apartment.

The evidence surrounding the two specific nights when the acts of adultery were alleged to have occurred was related by Dona Brand. She testified that between 4:30 p.m. and 5 p.m. on December 29, 1958, she observed the defendants as they met each other in downtown Pittsburgh. They walked to a parking lot and entered Donald's car. After doing some shopping defendants were trailed by the detectives, in a taxicab, to the residence of A. J. Clarke, 1160 Leaside Drive. Defendants entered the Clarke residence and were under surveillance for about twenty minutes; they were observed moving about in the kitchen area. The witness and her employer then returned to downtown Pittsburgh, but returned in Mr. Carter's car about 8 p.m. The witness testified that defendants were still in the house at 11 p.m. when the lights were turned off excepting a small light on the first floor. The detectives remained in the vicinity of the Clarke house until 3 a.m.

On January 16, 1959, the night of the second alleged act of adultery, about 6:45 p.m., Dona Brand observed defendants entering the apartment building where Mrs. Lewis lived. The detectives kept the apartment house under surveillance until 3 a.m. on January 17, 1959. She testified that she and her employer, Mr. Carter, saw a light go on in the third floor apartment,

and that they waited a while in the vicinity and then left temporarily. They came back from time to time and saw defendant Donald's automobile parked in front of the building. She further testified that it was a cold, blustery, snowy night, and that they discontinued the surveillance at 3 a.m., Saturday, and Donald's car was still parked in front of the building. She testified that she saw the lights go out about 11:30 p.m. in Mrs. Lewis's apartment. She returned with her employer at 9:20 a.m. on January 17th and the Donald car was still parked in front of the building. She said she saw Donald leaving the building about 1:10 p.m. that day.

The evidence upon which the Commonwealth relies for conviction came from Dona Brand, the employe of the paid private detective, Nicholas Carter. The testimony of paid private detectives in adultery cases will be carefully scrutinized and is frequently open to suspicion. *Brower v. Brower,* 157 Pa. Superior Ct. 426, 429, 43 A. 2d 422. Here Mr. Carter stated that his total compensation was $200, and that "I don't expect any more. I'm very glad to help Mrs. Donald out of her predicament. Mrs. Donald is a very lovely woman. And I know Mr. Jordan very well."

Unquestionably, the defendants were frequently in each other's company, but that is not sufficient evidence to warrant an adultery conviction. Accepting the testimony as furnishing proof of opportunity on the dates in question, we find no convincing proof of adulterous disposition or inclination on the part of defendants. The circumstances surrounding the meeting of the parties in private were not such that the inclination to commit adultery could be readily inferred therefrom as if they had rented a hotel room together, or had been found in a compromising situation. There was nothing to show adulterous disposition or inclination in conversation, writing, or conduct of the par-

ties. Opportunity without circumstances showing at least adulterous disposition or inclination of the parties is insufficient to establish defendants' guilt on the charge of adultery. Certainly the evidence does not establish guilt of the defendants beyond a reasonable doubt.

When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or liberty. When a party on whom rests the burden of proof in either a criminal or a civil case offers evidence consistent with two opposing propositions he proves neither. *Com. v. New,* 354 Pa. 188, 221, 47 A. 2d 450. The rule is equally applicable to a trial without a jury.

The inferences upon which the Commonwealth relies are of equal weight with those which could be drawn in favor of defendants. It is equally as reasonable to infer that defendants did not commit adultery as that they did. The most that can be inferred from the testimony is a suspicion, surmise, or guess that the parties may have committed the act of adultery. See *Com. v. Clinton,* 391 Pa. 212, 218, 137 A. 2d 463. Mere speculation is not sufficient for a conviction. *Com. v. LaRue,* 381 Pa. 113, 115, 112 A. 2d 362; *Com. v. Bausewine,* 354 Pa. 35, 41, 46 A. 2d 491; *Com. v. Bozzelli,* 188 Pa. Superior Ct. 41, 46, 146 A. 2d 74. If adultery could be inferred from the mere existence of an opportunity to commit the act, it would be unsafe for persons of the opposite sex to meet except in the presence of others.

The defendants' motions in arrest of judgment should have been granted. Act of June 15, 1951, P. L. 585, §1, 19 PS §871; *Com. v. Wright,* 383 Pa. 532, 119 A. 2d 492; *Com. v. McSorley,* 189 Pa. Superior Ct. 223,

226, 227, 150 A. 2d 570. In view of our conclusion on defendants' motions in arrest of judgment, it is unnecessary to consider the motions for a new trial.

The judgments of the court below are reversed, and the defendants are discharged.