**In re Petition for Naturalization of Michele MESSINA.**

**No. 2770–P–215983.**

United States District Court
E. D. Pennsylvania.
Aug. 7, 1962.

Albert J. Persichetti, Philadelphia, Pa., for petitioner, Michele Messina.

Eugene E. Cole, Dept. of Justice, Philadelphia, Pa., for the Government.

CLARY, Chief Judge.

The above-named petitioner is a native and national of Italy, age 33 years, who has resided continuously in the United States since his lawful admission for permanent residence on March 17, 1955. This Petition for Naturalization was filed on April 1, 1960, under the provisions of Section 316(a) of the Immigration and Nationality Act (hereinafter referred to as the "Act"), 8 U.S.C.A. § 1427.

The examiner has recommended that the Petition be denied on the ground that the petitioner has failed to establish that he has been a person of good moral character during the five-year period immediately preceding the filing of his Petition for Naturalization, as required by Section 316(a) of the "Act", 8 U.S.C.A. § 1427(a), thus precluding petition for naturalization under the provisions of Section 101(f) of the "Act", 8 U.S.C.A. § 1101(f). This recommendation is based upon the examiner's findings that from at least June, 1955 to May, 1961, the petitioner resided in an incestuous relationship with his aunt, one Mary Buoncuore, and that the petitioner knowingly and wilfully concealed the commission of adultery (incest) and gave false testimony relative thereto for the purpose of obtaining a benefit under the "Act".

The record in this case discloses that the petitioner's aunt, pursuant to a promise made to her sister, the petitioner's mother, undertook a course of action which would ultimately bring her nephew to this country. In order to accomplish this result, the aunt asked an American citizen named Doris Budd if she would be interested in marrying the petitioner. After exchanging pictures and letters with the petitioner, it was agreed that Doris Budd would go to Italy to marry the petitioner. The aunt accompanied Doris Budd to Italy and paid her expenses. In March, 1954, the petitioner and Doris Budd were married; however, at the insistence of Doris Budd, the marriage was not consummated. Doris Budd Messina and the aunt returned to this country, whereupon Mrs. Messina filled out a visa petition to confer non-quota status on the petitioner.

In March and April of 1954, the petitioner sent two letters to his aunt. The language of this correspondence would indicate that they were love letters; however, the petitioner denies that such was his intention. He explained that the letters were written at the request of his aunt in order to assist in her effort to make her husband jealous, which she felt would help solve certain marital problems that she was having.

About a year later, the petitioner notified his wife that he would be arriving in New York, but, when he arrived, she was not there to meet him. He then proceeded to go to his wife's home in Bridgeton, New Jersey, where despite his sincere and earnest pleas, Mrs. Messina refused to live with him as husband and wife. The petitioner then returned to New York, but, after trying for about a month, he was unable to get himself settled. He then contacted his aunt who at that time was living apart from her husband and family. When hearing of her nephew's plight, she suggested that he come live with her.

Thereafter, the petitioner resided with his aunt continuously from about June, 1955 to May, 1961, with the exception of a three-month period in 1956 when he took an apartment in Media, Pennsylvania, and made every reasonable effort to get his wife to come live with him. The petitioner and his aunt resided alone until some time in 1959, when the aunt's son came to live with them. The petitioner and his aunt over this period resided at three different places. The record discloses that the leases on the various apartments were taken in the names of Michele Messina and Mary Buoncuore, or in the name of the petitioner alone. The record also establishes that all of these apartments had separate sleeping accommodations.

The petitioner at first held various jobs, but, in September of 1955, he secured a position with the Stouffer Company. His employment record disclosed that in case of an emergency, Mary Buoncuore Messina, "his wife", was to be notified. The petitioner denied giving this information. He could not speak English; a young American of Italian lineage interpreted for him, and it is clear that the information recorded resulted from lack of communication, and that the petitioner had no knowledge of it until confronted with it at hearing.

In the latter part of 1955, deportation proceedings were instituted against the petitioner in order to determine whether he had gained entry into the United States illegally through a marriage of convenience to an American citizen; however, in 1957, the Board of Immigration Appeals directed that the deportation proceedings be terminated. It was at this time, he again tried to persuade his wife to live with him but was flatly refused.

Subsequently the petitioner divorced his wife in Pennsylvania. The petitioner has married again and presently resides with his wife, an American citizen, and child, born in Pennsylvania.

■ It is well established that the petitioner, in a proceeding of this nature, has the burden of proving his good moral character for the five-year period immediately preceding the filing of this Petition. Taylor v. United States, 5 Cir., 231 F.2d 856 (1956). The Government very properly contends that if the petitioner has committed incest during the five-year period, he cannot sustain his burden. In this case, the only question which is before the Court is whether or not the record contains evidence sufficient to justify a finding of incest.

■■ After a careful review of the record, this Court finds that the evidence is insufficient to support such a finding. When all of the evidence has been sifted, the only facts remaining of any probative value are the so-called "love letters" and the fact that the petitioner resided with his aunt. The fact that they resided together loses its significance because the record fails to establish that they ever held themselves out as husband and wife. At best this evidence creates no more than a suspicion of adultery. While this Court recognizes that it is extremely difficult to prove adultery by direct evidence, it also must recognize that when all that can be inferred from the evidence is a suspicion, surmise, or guess that adultery has been committed, then a finding of adultery is not warranted. Commonwealth v. Donald, 192 Pa.Super. 276, 161 A.2d 915 (1960).

Every action of the petitioner, except the "love letters" is entirely consistent with good moral conduct. The "love letters" throw a bizarre note into the case. They are so peculiarly worded as to make believable the sworn testimony of both the petitioner and his aunt that they were written at her request to help her out in her own matrimonial troubles. Without the letters and the employment records, which the Court feels have been fully and truthfully explained, the Government's contention falls.

The Court finds that the petitioner has established good conduct in accordance with the statute, has not been guilty of adultery (incest), and is entitled to citizenship.

The prayer of the petitioner for admission to citizenship is granted; he may take his oath at the next general Naturalization to be held in this Court and IT IS SO ORDERED.