## Commonwealth v. Kayfield

*Robert J. Hourigan,* First Assistant District Attorney, and *Arthur Piccone,* Assistant District Attorney, for Commonwealth.

*Joseph J. McCluskey, Jr.,* and *Joseph Hakun,* for defendant.

OPINION SUR MOTION IN ARREST OF JUDGMENT

SCHIFFMAN, J., December 8, 1965.—Before the court for consideration is defendant Allen Frank

Kayfield's motion in arrest of judgment. Defendant was convicted at trial before a jury of the offense entitled: Sale of Vehicle with Defaced Number, in violation of the Act of April 29, 1959, P.L. 58, sec. 304, 75 PS §304.*

Defendant was charged with and convicted of wilfully and feloniously selling a 1963 Mack truck trailer to one Joseph Bruno on June 11, 1963, with knowledge that the manufacturer's serial number had been removed and replaced with a false and fraudulent manufacturer's serial number.

The reasons assigned by defendant in the motion for arrest of judgment were not specifically pursued in argument before the court en banc. Our consideration of their merit, however, is herein set forth.

Defendant has stated the evidence was insufficient to sustain the verdict of the jury. Our conclusion necessitates our consideration of the entire record to determine whether there is sufficient evidence to establish the guilt of defendant. We must, after a verdict of guilty, accept as true all of the Commonwealth's evidence upon which the jury could have based the verdict: Commonwealth v. Phillips, 372 Pa. 223; Commonwealth v. Nichols, 206 Pa. Superior Ct. 352, 369.

The sufficiency of the Commonwealth's evidence must be tested according to the Commonwealth's testimony and all reasonable inferences arising therefrom: Commonwealth v. Moore, 398 Pa. 198, 202; Commonwealth v. Rosholm, 9 Lebanon 224.

A review of the Commonwealth's evidence and all

---

* "Any person selling or offering for sale in this Commonwealth a motor vehicle, trailer or semi-trailer on which the manufacturer's serial number has been destroyed, removed, covered, altered or defaced, with knowledge of said destruction, removal, covering, alteration or defacement of said manufacturer's serial number, shall be guilty. . . ."

reasonable inferences therefrom indicates that there was a sufficiency of evidence to establish the guilt of defendant.

Defendant also alleges the evidence was insufficient to sustain the charge of the indictment. On the contrary, a review of the record denotes defendant did wilfully sell to one Joseph Bruno the 1963 Mack truck tractor, identified as charged as belonging to Jasper Glover, from which the manufacturer's serial number had been removed. The testimony further indicates such sale was made with defendant's knowledge of such removal and replacement with a false and fraudulent number.

A companion decision involving the identical parties and circumstances has dealt with defendant's motion for a new trial. Specifically detailed therein was how and why the evidence was sufficient to sustain the charge of the indictment.

Defendant's assigned reasons for the unconstitutionality of the statute under which defendant was charged, tried, and convicted were unsupported at argument.

The statute involved will not be declared unconstitutional unless it *clearly*, *palpably* and *plainly* violates the Constitution: Milk Control Commission v. Battista, 413 Pa. 652, 659. The burden rests heavily on the party seeking to upset legislative action on constitutional grounds.

Defendant has failed to discharge the heavy burden placed upon him to overcome this strong presumption of constitutionality. Further, the words of the instant statute, based on the plain meaning of the terms involved, clearly sets forth the offense of sale of a vehicle with defaced number. The language involved conveys a sufficiently definite warning as to proscribed conduct when measured by common intelligence, understanding and practices.

Defendant's assertion that there is error appearing on the face of the record also remains unsupported. Our review of the entire record does not reveal either substantial error or injustice.

A review of all the reasons assigned by defendant in his motion for arrest of judgment indicates they are without legal merit.

Accordingly, we enter the following:

ORDER

Now, December 8, 1965, the motion of defendant Allen Frank Kayfield for arrest of judgment is denied.

OPINION SUR MOTION FOR NEW TRIAL

SCHIFFMAN, J., December 8, 1965.—Before the court for consideration is defendant Allen Frank Kayfield's motion for a new trial. Defendant was convicted of the offense entitled: *Sale of Vehicle with Defaced Number*, in violation of the Act of April 29, 1959, P. L. 58, sec. 304, 75 PS §304.[1]

Defendant was charged with and convicted of wilfully and feloniously selling a 1963 Mack truck trailer to one Joseph Bruno on June 11, 1963, with knowledge that the manufacturer's serial number had been removed and replaced with a false and fraudulent manufacturer's serial number.

Our consideration is directed to the many reasons set forth at argument in support of defendant's motion.

Defendant contends, inter alia, that the Commonwealth failed to establish two essential elements of

---

[1] "Any person selling or offering for sale in this Commonwealth a motor vehicle, trailer or semi-trailer on which the manufacturer's serial number has been destroyed, removed, covered, altered or defaced, with knowledge of said destruction, removal, covering, alteration or defacement of said manufacturer's serial number, shall be guilty. . . ."

the offense here involved. He avers that there was a failure to prove that the serial number was "removed and replaced" and that there was a "sale" to Joseph Bruno.

The Commonwealth's witness Bruno testified that on or about May 15, 1963, defendant Kayfield brought to his used car lot in Forty Fort, Pa., a New Jersey certificate of title to a Mack truck tractor and a motor vehicle identification plate bearing a number which corresponded to the identification on the title certificate. He indicated that the title certificate was taken to Harrisburg, and a Pennsylvania title for a truck bearing the identification number appearing on the certificate was obtained in the name of Bruno's business organization by defendant Kayfield.

Bruno testified that on June 11, 1963, a Mack truck tractor was brought to his place of business. The identification plate already secured was placed by the defendant on the doorjamb. Thereafter, Bruno, together with his salesman Craig, sold this truck to the S. & B. Trucking Company, endorsing the title to the S. & B. Trucking Company, signing it as a partner in the name of Bruno. In return, Bruno received $7,500 from the S. & B. Trucking Company in payment for the truck. Bruno, later on the same day, paid $5,500 to defendant Kayfield and divided the $2,000 balance between himself and Craig.

A sale consists in the passing of title from the seller to the buyer for a price: Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §2-106, as amended, Act of October 2, 1959, P. L. 1023, sec. 2, 12A PS §2-106. Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods: Act of April 6, 1953, P. L. 3, sec. 2-401, as amended by the Act of October 2, 1959, P. L. 1023, sec. 2, 12A PS §2-401.

The testimony of Bruno, if believed, indicates the above tests were met when defendant provided Bruno with indicia of ownership, delivered the truck involved to him and permitted him to deal with it as his own to the extent of delivering the truck to the S. & B. Trucking Company, executing a certificate of title in Bruno's name and permitting him to receive $7,500 for the vehicle. In return for this, defendant received the price of $5,500. The evidence adduced was legally sufficient to establish a "sale" of the vehicle to Bruno.

As to the "removal and replacement" of the serial number by defendant, Bruno's testimony revealed that Kayfield brought to him an identification plate for a 1962 Mack truck tractor in May of 1963. Further denoted was that Kayfield and others obtained a Pennsylvania certificate of title based upon that identification plate. This plate was retained in Bruno's custody until June 11, 1963, at which time Kayfield brought to Bruno's lot in Forty Fort, Pa., a 1963 Mack tractor. Other testimony revealed this vehicle was one which had been previously stolen from one Jasper Glover.

The evidence further revealed that the plate was removed from Bruno's safe, in which it had been kept, and attached to one of the doorjambs of this truck by defendant Kayfield. The truck was then turned over to Bruno and sold by him with this identification plate still affixed to it. There is no reference in the entire testimony to the existence of any other plate affixed to either door of the vehicle involved.

The testimony denoted that the vehicle involved had been in defendant Kayfield's possession, and that the false tag had been attached by him. Within the context of the sequence of events, the evidence of attaching of the false number revealed *replacement*.

It is not an improper inference for the conclusion

that the original plate was *removed* by defendant. To draw a legitimate inference, one must apply logic and common sense to the circumstances of a particular case in order to deduce a proposition as a logical consequence from other facts already proved: Bruce Lincoln-Mercury, Inc. v. Universal C.I.T. Corporation, 325 F. 2d 2, 22, 3d Cir. (1963).

Integrated in the present circumstances is a proper inference by the fact-finding tribunal that defendant *removed* the true number. Such inference is legal evidence. The jury could properly conclude such *removal* by defendant.

Assuming, arguendo, the testimony revealed a *replacement* only by defendant, such act must be viewed within legislative expression and contemplation. The express requirement for guilt is that the vehicle must be sold with the knowledge that the manufacturer's serial number was *destroyed, removed, covered, altered* or *defaced*: Act of April 29, 1959, P. L. 58, sec. 304, 75 PS §304. Defendant's attachment of a false number, within the instant circumstances, is such an *alteration*.

We reach no different conclusion because the indictment charges a *removal* and *replacement*. All unnecessary words in an indictment may be rejected as surplusage if the indictment would be good after they are stricken out: Commonwealth v. Havrilla, 38 Pa. Superior Ct. 292. For the reasons enumerated, even if the word *removed* was stricken from the indictment, it would still set forth the defined offense, and appropriate proof of the *replacement* charged would be sufficient to sustain a conviction.

Another objection raised by defendant is that the Commonwealth failed to overcome the presumption of innocence in that certain police reports admitted into evidence contained "facts" inconsistent with the proof submitted by the Commonwealth at the trial.

They cite in support of this position Commonwealth v. Bozzelli, 188 Pa. Superior Ct. 41.

State Police Sergeant Miller, a Commonwealth witness, testified in substance to the fact that he conducted an investigation, found the truck in question which had been sold by Bruno, and, upon the basis of his findings, arrested defendant. At the insistence of defendant, Sergeant Miller produced his official report and was crossexamined as to its content. The purpose of this crossexamination was solely to test the credibility of the witness Miller.

The report contained reference to the transaction occurrence on June 10, 1963, rather than on the following day, as testified to by the witness Bruno. All of the information contained in the report was hearsay and not substantive evidence. It was significant to whatever extent it contained inconsistencies with the testimony of Miller and Bruno to attack their credibility.

The report revealed that at the time Sergeant Miller conducted the investigation, he believed the offense to have been committed on June 10, 1963. However, the witness Bruno testified that although he originally revealed that date to Sergeant Miller, subsequent reflection established June 11, 1963, as the actual date. This fact cast some doubt on the veracity of Bruno, which was appropriately evaluated and resolved by the jury.

We do not concur with defendant's contention that the police report created a reasonable doubt as a matter of law. Kayfield's position ignores the sequence of Commonwealth's witnesses' incriminating testimony. This matter is readily distinguishable from the Bozzelli case, where the Commonwealth relied entirely on circumstantial evidence which was of a quality and quantity not to warrant a conviction.

Defendant further charges the information avail-

able in the Pennsylvania State Police reports was not voluntarily disclosed by the Commonwealth prior to or at the commencement of trial. Such failure to disclose is alleged to have seriously prejudiced Kayfield and infringed upon his fundamental guarantees.

Defendant has not cited reason or authority in support of his alleged right to a voluntary pretrial disclosure by the Commonwealth. The philosophical aspects of his position are not consonant with the law or spirit of criminal justice, which means fairness and protection for society as well as for the basic rights of the accused.

The constitutional guarantee of a fair trial and its interpretation by the courts of this Commonwealth has always been premised upon defendant's own request for pretrial discovery and inspection. See Commonwealth v. Smith, 417 Pa. 321; Commonwealth v. Caplan, 411 Pa. 563; Pennsylvania Rules of Criminal Procedure, rule 310. The controversial aspects of pretrial discovery and inspection have not been extended to impose upon the Commonwealth the burden and scrutiny of presenting items of defense to defendant without request.

Defendant further charges that the trial court erred in refusing to permit the defense to show the bias or interest of the witness Bruno. This objection is directed basically to two alleged improprieties.

The first of these alleges error in permitting Bruno to be crossexamined with regard to the fact that he had testified against defendant in another criminal proceeding in another county, but not as to the result of that trial or what was "specifically" involved.

Defendant has the right to test the credibility of the witness Bruno on any legitimate ground. Interest, bias, or prejudice are proper bases for impeaching such credibility. However, the jury's verdict in another case against defendant is irrelevant in the in-

stant trial to attack the credibility of the witness Bruno. Evidence offered for that purpose was properly excluded.

The second alleged impropriety in this regard is that defendant was prejudiced by the trial court's refusal to permit defendant to crossexamine Bruno as to whether he had testified on a prior occasion in another criminal proceeding that he expected "special consideration" for testifying against Kayfield. It is again difficult to see how such testimony in a different jurisdiction for a different crime, apparently having different facts and circumstances, is pertinent to this separate, independent trial.

The question referred to followed explicit testimony by Bruno in crossexamination that he did *not* expect special consideration as a result of his testimony in *this* case. No proper foundation was presented preliminarily as to whether he had not testified in a different manner in other proceedings.

Defendant did not produce the record of the other proceedings referred to and relied upon for impeachment purposes. There was no appropriate confrontation of the witness as to the precise question he was asked and his response on another occasion. No proper foundation was laid in confronting the witness with the circumstances of his alleged inconsistent statements.

Defendant's contention that the facts in the other criminal proceedings involved the credibility of the witness as the principal issue is unsupported. We are also unable to indulge the contention that the jury's verdict reflects the witness's lack of credibility. The trial judge appropriately restricted such conjecture.

The case of Commonwealth v. Turner, 371 Pa. 417, is inapposite to the present circumstances. Defendant's procedure and purpose in this matter justifies the court's exclusion of reference to the witness's

prior alleged inconsistent statement on another occasion.

A trial judge is necessarily vested with broad powers to control the course of the trial. The scope of crossexamination is largely within the sound discretion of the trial judge: Commonwealth v. Smith, 198 Pa. Superior Ct. 499, 503. Within the present circumstances, there was no abuse of discretion by the court. The scope of the crossexamination was properly controlled.

Defendant complains that he was prejudiced by the court's failure to grant a continuance. Such continuance is claimed as necessary for an adequate opportunity to prepare for trial. It is maintained the proceedings should not have commenced on the actual trial date. Defendant also alleges his lack of possession of the record of the "other" proceedings, relied upon for impeachment purposes, merited a continuance during the trial.

We do not concur with defendant's claim that his attorney did not have an adequate opportunity to prepare for trial. The record reflects that as early as July 1964, when defendant was arrested for this offense, present counsel was engaged by defendant and actively participated in the bail arrangements. The date on which this trial began was November 17, 1964.

Defendant cannot be permitted to stand by four and one half months while free on bail and then complain that he has not had an opportunity to prepare his defense. In addition, counsel for defendant, by his own admission, knew on November 12, 1964, four days before trial, of the precise commencement date, and did nothing until the date of trial.

The circumstances negate defendant's argument that there was insufficient time to adequately prepare for trial. On the date of trial, his counsel submitted to the court a comprehensive brief setting forth the reasons for the requested continuance. Thereafter, when

the continuance was refused, defense counsel presented a highly competent and resourceful defense. The 10-day trial evidenced abundance, rather than lack, of preparation by the defense.

The continuance requested during trial was also not merited. The record revealed that, before trial, defendant's counsel knew the notes of testimony of the "other" proceedings might be required for impeachment purposes. Despite the 10-day trial, defendant did not resort to available procedure in order to secure the other record of testimony.

The grant or refusal of a continuance is a matter solely within the discretion of the trial court. Such action will be affirmed unless there has been an abuse of that discretion: Commonwealth v. Wilson, 205 Pa. Superior Ct. 36, 38. The refusal of the continuance here involved was a proper exercise of discretion.

Another reason assigned by defendant is his claim of prejudice in determining whether statements for impeachment existed. The gravamen of his complaint is that there were references to other criminal involvements which created a prejudicial atmosphere.

We have reviewed the various statements [2] averred by defendant in support of his position. We have considered the question of whether or not these state-

---

[2] The statement of the witness Bruno of May 5, 1964, inspected by defendant for impeachment purposes, was edited by the court insofar as a portion of it contained references to transactions not here involved.

Crossexamination of witness Bruno:

N.T. pp. 91, 92: "Mr. Hakun: Q. Did you ever give any written statements at all to any law enforcement agent? Witness: A. In May of 1964.

"Q. To whom was that given? A. Sergeant Miller was the first one I gave a statement to.

"Q. Where was that statement given, sir? A. At the Wyoming State Police Barracks.

"Q. Did you write out a statement or did the Trooper write out a statement? A. He typed it and I signed it.

ments were prejudicial together with the trial court's instructions to the jury.

We do not conclude the prejudicial impact complained of by defendant. Scrutiny of these statements

---

"Q. And you signed it? A. Yes.

"Mr. Hakun: If your Honor please, could we have that statement produced? By the Court: Have you made any effort to, up to this point, have it produced?

"Mr. Hakun: No, sir. By the Court: Mr. Piccone?

"Mr. Piccone: Your Honor, I think the defendant has a basis on which to request it and, after setting forth preliminary groundwork—he knows how to go about doing it properly—and once that is done, after I determine whether or not after his questions, I would state my position at that time.

"By the Court: Well, the defense counsel has questioned the witness as to whether or not a written statement was given to Sergeant Miller. The witness testified that Sergeant Miller typed the statement and he signed. He is now asking whether or not he may inspect that statement.

"Mr. Piccone: *Your Honor, a statement concerning what? Would counsel tell us which particular instance these two men have been involved in that he would like to have a written statement for?*"

N.T. p. 110: "Mr. Hakun: Did that statement that you gave on May 6th in Philadelphia, did that say anything about Allen Kayfield? Witness: A. Yes, sir.

"Mr. Hakun: If your Honor please, I move for the production of that statement. By the Court: Mr. Piccone?

"Mr. Piccone: May it please the Court, I am sure defense counsel is well aware of the rules of evidence in this Commonwealth that the District Attorney's office in Luzerne County cannot procure statements from the police departments of other counties. Number 1, *we have no authority to do so, but, more important than that, it is a matter before the Courts of Philadelphia, not before our Court, and we have no jurisdiction over same. It would be available for him, sir, when the matter comes before a Court down there, which he is well aware of*".

N.T. p. 125: "Mr. Hakun: These four statements are the only statements you have given—they are the ones I am referring to—at any time? Witness: Is that a question, sir?

"Q. The four statements I have just mentioned? A. Yes sir.

"Q. You didn't give any other written statements to the FBI,

does not reveal that they inflamed the minds of the jury or improperly influenced their verdict.

Our conclusion is strengthened by our review of the trial court's instructions to the jury. These admonitions restricted the reference to statements to those pertinent to this particular case and defendant here involved.[3] Such instructions were supplemented by a specific charge to disregard any voluntary comment of counsel and all else not supported by the testimony.[4]

It is our determination that the court's instructions negated the adverse implications contended by defendant. They were of sufficient adequacy to prevent any alleged objectionable statement from influencing the jury's decision.

The action of the trial judge was, in our opinion, sufficient to overcome any harm to the cause of de-

---

state police, or anybody else? A. Are you asking me a question? Did I give any other statements, sir?

"Q. Yes. A. Pertaining to this case or this client?

"By the Court: This defendant. Witness: This defendant. *It is a question you asked me, is that correct, sir? Yes, I did give other statements pertaining to your defendant, but on another case*". (Italics supplied).

[3] N.T. pp. 125, 126: By the court: "*I will ask the jury to disregard it. The question was whether or not he gave another statement. So there is no misunderstanding between counsel, the witness, or anyone else, we are only interested in any statements which may have been given in reference to the defendant in regard to this particular case and that only. Other than that, ladies and gentlemen of the jury, I ask you to disregard it. We are only concerned with the facts of this particular case. That's all we have the right to consider.* Let's proceed". (Italics supplied).

[4] Charge of court, p. 411: "*In deciding this case—and we draw to the close of the charge—you are to be guided solely by the evidence as you will see in the exhibits and that you have heard in Court and by the arguments of counsel, insofar as they are based upon and warranted by the testimony. Put out of your mind anything else that is not supported by the testimony. This includes any voluntary comment of counsel and all else which is not supported by the testimony . . . .*" (Italics supplied).

fendant. The handling of such incidents during a trial are largely within the broad powers and discretion of the trial judge. His actions will not be disturbed unless there is an obvious abuse of discretion: Frontage, Inc. v. Allegheny County, 413 Pa. 31.

The decision to withdraw a juror and declare a mistrial is a matter within the sound discretion of the court: Commonwealth v. Warfield, 418 Pa. 301, 304. We concur with the trial court's exercise of discretion.

Defendant also complains that the court erred in charging that the District Attorney need not call an eyewitness to a crime to testify if he has reason to believe he might be unreliable. The defense concedes this is a proper statement of the law: Commonwealth v. Horn, 395 Pa. 585; Commonwealth v. Garnett, 204 Pa. Superior Ct. 113.

The basis of defendant's objection is that this instruction was inapplicable to the facts and, therefore, confused the jury. However, the record indicates the witness Bruno revealed, on a crossexamination, that one Charles Kesselman was present when certain acts were done in furtherance of the crime charges. Defense counsel created an aura of mystery about Kesselman by intensively questioning Bruno as to whether or not he was aware of the identity of this person on the day of the commission of the offense and when Bruno made certain statements to law enforcement officials.

Despite these references, defendant did not produce Kesselman or show his unavailability. The repeated references to Kesselman by defense counsel could clearly give rise to an unfair and illegitimate inference unfavorable to the Commonwealth. The charge of the court as to eyewitnesses [5] was essential to proper perspective of the circumstances involved.

---

[5] Charge of court, p. 406: ". . . the calling of witnesses is within the discretion of the District Attorney under the general

Defendant's argument, that this charge was confusing in that it might be construed by the jury to have been applicable to more than one witness, is equally without merit. The language of the court referred to an "eyewitness". In common parlance, this may mean only one who was actually present and observed the commission of the crime. Only one such person, Kesselman, in the factual situation involved, would actually fit this description in the instant trial.

Defendant also complains of the fact that the trial court refused to charge that the witness Bruno was an "accomplice" of defendant Kayfield and that, therefore, his testimony had to be viewed with the utmost caution.

The general rule is that when the facts, with respect to the participation of a witness in the crime for which a defendant is on trial, are clear and undisputed, it is for the court to determine whether or not he was an accomplice. However, where the facts are in dispute, or different inferences might reasonably be drawn therefrom, the question whether or not a witness was an accomplice is for the jury: Commonwealth v. Brown, 116 Pa. Superior Ct. 1, 12.

We do not believe the present factual situation impelled the court, as a matter of law, to declare the witness Bruno an accomplice. The defense in his trial was that of alibi. Defendant maintained he was somewhere else at the time the offense was committed. Several witnesses testified specifically in regard to this defense.

If the court had charged that Bruno was an accomplice, such instruction could be equated as a direction by the court that defendant Kayfield was,

---

supervision of the trial judge. The Commonwealth is not obliged to call all eyewitnesses in a criminal prosecution nor a particular eyewitness where the District Attorney has reason to believe that the eyewitness is unreliable".

in fact, involved in this crime and present at the site of its commission. The unfair implications of such a charge are obvious.

Instead, the trial court permitted the jury to determine whether or not Bruno was an accomplice. A review of the charge in that regard [6] reveals that the court clearly defined the test of an accomplice, accompanied by appropriate cautionary instructions.

The trial court also properly advised the jury that whether or not Bruno met the tests of an accomplice, he had admitted certain complicity. Consequently, cautionary instructions were given to the jury to carefully consider the source of his testimony and its possible motivations.

The trial court need not describe a particular witness as an "accomplice" so long as the jury is adequately cautioned as to the general unreliability of testimony emanating from a corrupt source. See Commonwealth v. Williams, 187 Pa. Superior Ct. 295. The trial judge's instructions adequately, fairly, and impartially informed the jury of this aspect of the case.

Defendant complains also that the form of the court's charge relating to inconsistent evidence, reasonable doubt, and burden of proof was erroneous. The portion of the charge complained of is stated as follows:

"If you find apparent inconsistencies between the evidence of different witnesses, it is your duty to reconcile them if you can, and if you cannot, then you *must* determine whom you will believe and whom you will not . . . ." (Italics ours).

Defendant maintains that the court's use of the word "must" takes away from the jury their right to consider some middle ground or "gray" area. It is

---

[6] See charge of the court, N.T. p. 408.

claimed such instruction compelled the jury to make a "black or white" determination, thus negating defendant's right to compel the Commonwealth to prove his guilt beyond a reasonable doubt.

This reasoning is at best strained. This is particularly apparent in the light of the preceding portion of the court's charge,[7] directed to the jury's consideration of the credibility of the witnesses. The instruction did not require the jury to accept the version of any or all of the witnesses, but merely told them to reconcile all of the testimony if possible and to reject that which was unbelievable.

The Supreme Court's decision in Luckenbach v. Egan, 418 Pa. 221, relied upon by defendant, is clearly distinguishable from the instant matter. The trial judge there erroneously charged the jury that they must believe either plaintiff's or defendant's entire version of the incident. The charge under consideration had no such effect. The jury here involved was properly directed to consider all of the evidence and to conclude from it what reason and experience dictated.

We also do not attach merit to the objection to the court's charge in regard to reasonable doubt. The pertinent portion complained of is as follows:

"It must be an honest doubt arising out of the evidence itself, the kind of doubt that would *restrain* a reasonable man or woman from acting in a matter of importance to himself or herself". (Italics ours).

Defendant's objection is directed to the use of the word "restrain" in the court's charge. It is contended that the word "hesitate" should have been used instead of "restrain".

The precise language of the court's charge, including the word "restrain", has received the specific ap-

---

[7] See charge of the court, N.T. p. 384.

proval of the Supreme Court. See Commonwealth v. Burns, 409 Pa. 619, 635. Further approbation of this form of charge was expressed in Commonwealth v. Ghaul, 205 Pa. Superior Ct. 80, 85, and the numerous cases cited therein.

The lack of merit of defendant's objection is further evidenced by a review of the court's entire charge. Clearly, the relevant portion of this charge provides defendant with an appropriate definition of burden of proof and reasonable doubt.[8]

We consider finally the point raised by defendant that his constitutional rights were denied because of the trial court's limitation of defense counsel's cross-examination of one Ronald S. Weaver.

The witness Weaver testified in behalf of the Commonwealth. He identified himself as a special agent for National Automobile Theft Bureau, a private investigative organization set up to identify vehicles where the serial number plate has been lost or removed.

Weaver testified he was requested to examine a vehicle held by the Pennsylvania State Police. He identified the vehicle as the one stolen from Jasper W. Glover and involved herein. This identification was established by Mr. Weaver's inspection of a "secret" number located on the chassis of the vehicle. The witness testified that the secret number on the instant vehicle corresponded with the original number on the Glover truck, although the visible number on the door-jamb did not.

Mr. Weaver was asked the precise location of the number by defense counsel. The trial judge, however, granted the request of the witness to refuse to answer that question specifically. Defendant contends that this amounted to an unreasonable restriction of his right to crossexamine the witness.

---

[8] See charge of the court, N.T. pp. 378, 379.

Crossexamination is a vital and essential requisite in our system of trials. Its fundamental purposes are evident. However, such significance has never been equated into an unrestricted or unregulated right. On the contrary, the scope or limitation of crossexamination is largely within the discretion of the trial judge, and his action will not be reversed in the absence of an abuse of that discretion or unless an obvious disadvantage resulted therefrom to the other party. See King v. Holt, 200 Pa. Superior Ct. 431, 435, and cases cited therein.

The present factual situation indicates the trial judge did not limit crossexamination of the witness except insofar as it related to the *precise* location of the "secret" number. Actually, the crossexamination on this aspect of the case was extensive and detailed. Numerous questions were permitted as to how Weaver went about discovering the secret number and where it *generally* was located.

The restraint was placed upon crossexamination as to the *precise* location of the number in question in order to protect the public interest in permitting stolen vehicles to be readily identified. There is no doubt that the existence of a secret number is a deterrent to certain types of criminal activity and an aid in such apprehension.

It is common knowledge that organized auto theft each year results in substantial deprivation of life and property. The question of the *precise* location of the secret number, therefore, involves a matter of public policy.

Justice is not a one-way street. It means fairness and protection for society as well as fairness and protection of the basic rights of an accused: Commonwealth v. Caplan, 411 Pa. 563, 567. Within such framework, criminal justice must be carefully and sensitively evaluated.

The case of People v. Ramistella, 306 N. Y. 379, 118 N. E. 2d 566, a New York case, is relied upon by defendant in support of his position. In that case, it was held that the trial court erred in not requiring the revelation of the location of the secret number. A reading of that case as reported does not disclose the extent of the crossexamination which was permitted. We are unable to determine if the circumstances of that case did, as in the instant case, otherwise allow great latitude in crossexamination sufficient to reveal the general location of the secret number. It also does not appear in the Ramistella case that the court provided defendant with a means to obtain the truth of the matter testified to, as did the trial judge in the instant matter.

A more recent case in this Commonwealth recognized the trial court's right to appropriately limit crossexamination where a matter of public policy was involved. The court refused to permit the crossexamination of a witness as to her residence because of circumstances which denoted jeopardy to her safety. It was held that the safety of the witness was properly a matter of concern for the court. The matter was determined to be within the trial judge's discretion: Commonwealth v. Cohen, 203 Pa. Superior Ct. 34, 71.

We believe the resulting evils from disclosure of the "secret" number of the vehicle are also properly matters of concern for the court. We determine these circumstances are to be evaluated with consideration of public safety as well as the basic rights of the accused. We conclude that the specific crossexamination inquiry appropriately required a careful exercise of the trial judge's discretion.

The legitimate purpose of crossexamination is directed toward ascertainment of the truth in any given situation. In an endeavor to not violate public policy and yet protect the basic rights of the accused, the

trial judge suggested an alternate plan out of the hearing of the jury.

The plan suggested was that the vehicle involved be brought to an appropriate place in the city of Wilkes-Barre. Defendant, his counsel, the District Attorney, the court and necessary court personnel would then go to that place. The witness Weaver would then be given a sheet of paper initialled and signed so as to guarantee its authenticity. Weaver, in such presence, would then be observed to approach the vehicle and go under it. (Mr. Weaver admitted the number was under the truck on the chassis.) Those assembled would not directly observe but would remain present while Weaver would trace the serial number on the specially prepared piece of paper, and return with it. Weaver would then testify as to what was done before the jury and would be subject to crossexamination on that aspect of the case. The defense rejected this plan.

Our conclusion as to the exercise of the trial judge's discretion must be viewed in the light that the protection of a public interest was involved. It must be viewed also with the awareness that intensive cross-examination of Weaver's obtaining the secret number was permitted, although testimony as to its precise location was restricted. Such crossexamination did reveal the *general* location of the secret number. It must also be viewed with the realization that the trial judge, in addition to permitting intensive cross-examination, also extended defendant an opportunity to establish the veracity of Weaver's testimony.

The totality of all the circumstances embraced within the scope or limitation of the crossexamination involved did not result in an abuse of the trial court's discretion or in an obvious disadvantage to defendant.

On view of the whole cause, we determine the legal propriety of these proceedings and the verdict ren-

dered by the jury. Fair construction of the evidence warrants the result and does not warrant the granting of a new trial.

In considering defendant's motion for a new trial following conviction of a crime, the court must accept as correct the testimony which was submitted by the Commonwealth, as well as the reasonable inferences which can properly be drawn therefrom: Commonwealth v. Bricker, 58 Lanc. 381; Commonwealth v. Kehoe, 35 Northumb. 150.

Many of the reasons originally assigned by defendand in his motion were not pursued before the court en banc. This decision expressly resolves the matters presented in argument. A review of all reasons assigned by defendant in his motion for a new trial merited our consideration and conclusion.

Accordingly, we enter the following

ORDER

Now, December 8, 1965, the motion of defendant Allen Frank Kayfield for a new trial is denied.