FREEDMAN v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. July 21, 1921.)

No. 2643.

1. Criminal law ⬅1038(3)—Support for assignment of error based on insufficiency of evidence as to identity held not furnished by request to charge.

An omnibus request to charge that under all the evidence verdict should be for defendant was not enough to call the trial judge's attention to claim that the evidence did not show identity of certain shipments of shoes with the shoes stolen and subsequently received by defendant, so as to furnish support for an assignment of error based on that claim.

2. Receiving stolen goods ⬅3—Knowledge of theft from interstate shipment not essential.

Under the statute denouncing the crime of having in possession goods stolen from an interstate shipment, knowing they had been stolen,

it is immaterial that defendant did not know that they were stolen from such a shipment; he taking the chance that they had been so stolen and receiving them at his peril.

3. Criminal law ⚎510, 780—Conviction may be had on uncorroborated testimony of accomplices; the jury being cautioned to scrutinize it carefully.

While the jury should be cautioned to scrutinize most carefully the uncorroborated testimony of accomplices, there is nothing which forbids a conviction at common law or in a federal court on such testimony.

4. Criminal law ⚎822 (15)—Charge on defendant's testimony held fair.

A charge to the effect that in weighing defendant's testimony the jury might consider his interest but are to accept or reject it according to their honest judgment whether it is in accord or in conflict with the truth, *held*, as a whole, full, fair, without prejudice, and free from error.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Joseph Freedman was convicted of receiving stolen property, part of an interstate shipment, denied a new trial (268 Fed. 655), and brings error. Affirmed.

David Phillips and Herbert W. Salus, both of Philadelphia, Pa., for plaintiff in error.

Charles D. McAvoy, U. S. Atty., and Robert J. Sterrett, Sp. Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The defendant, Joseph Freedman, with L. W. Becker and others, were indicted for having in possession 35 pairs of shoes and 3 cases of children's shoes, parts of interstate shipments of freight, knowing the same to have been stolen, and for conspiracy "to carry and transport from Emaus, in the state of Pennsylvania, to Brooklyn, in the state of New York," these shoes. There are eight counts in the indictment, but Freedman is mentioned in the third, fourth, seventh, and eighth counts only. The third and seventh counts charge Freedman with having the stolen shoes in his possession, there being a different shipment in each count, and the fourth and eighth counts charge conspiracy "to carry and transport," etc., which in substance is a charge of conspiracy to have the shoes in possession knowing them to have been stolen. The defendants, with the exception of Freedman, pleaded guilty and have been sentenced, or are awaiting sentence. He pleaded not guilty, was tried, convicted, and is here on writ of error.

The facts, so far as necessary for this opinion, are as follows:

James J. Devers, one of the defendants, made a practice of stealing merchandise from railroad cars in the freight yard of the Lehigh Valley Railroad at Allentown, Pa., and with the assistance of a chauffeur named Musselman sold it to persons in the neighborhood. In May, 1916, he stole the shoes in question and sold them to L. W. Becker, George Smolens, and I. Feiblowitz, who were engaged in sell-

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing merchandise in Allentown and Emaus, a small town near Allentown. It was reported that Musselman had "squealed," and Becker, Smolens, and Feiblowitz went to New York and arranged with Freedman to dispose of certain merchandise, in which were the shoes mentioned in the indictment. The other defendants were suspicious of James Devers, who had reported that Musselman had "squealed," and thought that he might be attempting to "pull off" something. This suspicion was told to Freedman, who is reported to have said:

"Introduce me to that Jimmy Devers, as a friend of yours, an attorney. I will go out with him for a walk, and I am sure I can get it from him, whether or not it is a squealing case, or whether or not it is a case of pressing money."

After talking with Devers alone for about an hour, Freedman told the other defendants that—

"It is a squealing case, not a blackmailing case. I have talked with him for quite a long while, and that is my opinion."

Freedman then engaged H. Lubarsky, a truck driver, to go down to Allentown and Emaus in a truck on May 20, 1918 to bring the merchandise in the stores of Becker, Smolens, and Feiblowitz back to New York to Freedman's place. It was thought best that Smolens and Feiblowitz should not return to Allentown, and so they gave the keys of their stores to Freedman, who himself went to Allentown and Emaus, met the truck into which, under the supervision of Freedman, all the merchandise in the two stores was placed and taken to New York.

There is no dispute that the shoes were stolen, that the conference between the other defendants and Freedman took place in New York City, and that the shoes were brought to New York from Allentown and Emaus. The only dispute is whether or not Freedman knew that they had been stolen, as the other defendants testified they told him.

The defendant contends that the judgment should be reversed for three reasons: (1) The government failed to prove the identity of the shoes; (2) the defendant may not be convicted on the uncorroborated testimony of accomplices; and (3) errors in the charge of the learned trial judge.

[1] The defendant did not bring the alleged failure of the government to prove the identity of the shoes to the attention of the court at the trial. He now contends that the evidence does not show that the particular shoes which were shipped by A. Jacobs Sons Company of Boston, Mass., and Brophy Brothers Shoe Company, Lynn, Mass., to their respective consignees in Allentown, Pa., were those identical shoes stolen by Devers, sold to Smolens, Becker, and Feiblowitz, and received by Freedman; the shoes received by Freedman may be those stolen from the cars by Devers but no one identified them as the shoes shipped by the above-named companies. However that may be, the point was not raised at the trial. In order to lay a foundation to review by writ of error the proceedings in federal courts in the trial of common-law actions the question of law proposed to be reviewed must be raised by specific, precise, direct, and unambiguous objections so taken as clearly to afford to the trial judge an oppor-

tunity of revising his rulings. Fairness to the trial judge requires this, and a bill of exceptions not fulfilling this test does not furnish support for an assignment of error. Beaver v. Taylor, 93 U. S. 46, 55, 23 L. Ed. 797; Robinson & Co. v. Belt, 187 U. S. 41, 50, 23 Sup. Ct. 16, 47 L. Ed. 65; McDermott v. Severe, 202 U. S. 600, 610, 26 Sup. Ct. 709, 50 L. Ed. 1162; Frey & Son, Incorporated, v. Cudahy Packing Co. (decided April 18, 1921), 255 U. S. ——, 41 Sup. Ct. 451, 65 L. Ed. ——. The only objection disclosed by the record which might possibly cover the question now pressed was a request to charge that "under all the evidence your verdict should be for the defendant." Clearly this was an omnibus request, and did not call the attention of the judge to the point now under consideration.

[2] If the defendant had knowledge that the goods were stolen when he received them, he took the chance that they might have been stolen from an interstate shipment of freight or express, and received them at his peril. The statute provides that whoever shall steal from a railroad car any goods or chattels, which are a part of or constitute an interstate shipment of freight or express, or shall "have in his possession any such goods or chattels, knowing the same to have been stolen," commits the crime denounced, and it is immaterial whether or not he knew the points of origin and destination of the goods. Kasle v. United States, 233 Fed. 878, 147 C. C. A. 552. The contention that there is no evidence showing "that the defendant knew the goods were the subject of interstate commerce" is not, therefore, a defense to this action.

[3] The learned trial judge charged the jury that it should give far greater scrutiny, care, and consideration to the testimony of accomplices than to that of witnesses of "unsullied reputation," for "the source of that testimony, you see, is tainted." He cautioned the jury that it should consider such testimony, and give to it the weight to which under all the circumstances it was entitled. He said:

"You are not merely to scrutinize it, but look at it from every angle. You are to test the question of its truth or falsity by every test which occurs to you that can be applied to it. If, after you have carefully considered it, the conviction rests upon your minds, with that degree of certainty which the law requires, that the testimony is true in its substantial features, and convinces you, as the phrase is, beyond a reasonable doubt of the guilt of the defendant, then you are not only justified, but it is your duty, even following testimony and evidence of that kind, to convict. * * * Do not throw this testimony out because it comes from a tainted source, but consider it, and, while you are considering it, remember from whom and what kind of witnesses the testimony comes."

The charge on this point appears to us to have been eminently fair and without error. While the jury should be cautioned to scrutinize most carefully the uncorroborated testimony of accomplices, yet, when this has been done, there is nothing which forbids the conviction of a defendant, at common law or in a federal court, on their uncorroborated testimony. Richardson v. United States, 181 Fed. 1, 9, 104 C. C. A. 69; Knoell v. United States, 239 Fed. 16, 20, 152 C. C. A. 66; Holmgren v. United States, 217 U. S. 509, 523, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Caminetti v. United States, 242 U. S.

470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

[4] It is contended that the trial judge erroneously charged the jury on the volume of crimes of the kind here on trial, on the interest of the defendant in this case, and on the value of character testimony. We have carefully examined the charge, but do not discover alleged errors. He charged that the defendant had produced witnesses to his good reputation, he had never been convicted of any crime, his testimony was not tainted, but that he was the defendant and an interested party in the case, and that the jury might consider that fact in weighing his testimony. He summarized this part of his charge in his last sentence on the subject:

"You are not to accept it because he gives it, or throw it out because he is the defendant in the case, but you are to accept it or reject it according to your honest judgment whether it is in accord or whether it is in conflict with the truth."

And with this statement we agree. The charge as a whole, we think, was full, fair, without prejudice, and free from error, and the judgment of the District Court will be affirmed.

5. Patents ☞328—1,058,250, claims 1, 2, and 4, for casting iron pipes, held infringed.
   The Millspaugh patent, No. 1,058,250, claims 1, 2, and 4, for the casting of iron pipes in a whirling mould, held infringed by Kneass patent, No. 538,835.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes