## Commonwealth *v.* Sisak, Appellant.

Argued January 23, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

264

*John E. O'Connor* and *Peter J. Webby,* Public Defender, for appellant.

*Jerry B. Chariton,* Assistant District Attorney, *Charles D. Lemmond, Jr.,* First Assistant District Attorney, and *Blythe H. Evans, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, November 28, 1969:

On February 9, 1966, Frank Sisak (appellant) was found guilty of burglary and larceny after trial by jury in the Court of Oyer and Terminer of Luzerne County. After his motion for a new trial was denied, he was sentenced to ten to twenty years imprisonment. The judgment of sentence was affirmed by the Superior Court *per curiam,* Judge HOFFMAN filing a dissenting opinion in which Judge SPAULDING joined. *Commonwealth v. Sisak,* 211 Pa. Superior Ct. 255, 235 A. 2d 630 (1967). We granted allocatur.

As we view this appeal, the question presented is whether the trial court committed reversible error in

failing to instruct the jury that it could determine whether one of the Commonwealth's witnesses was an accomplice of the appellant and, secondly, that if it found the witness to be an accomplice, it should view his testimony as tainted and give it careful scrutiny.

It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so. *Commonwealth v. Turner*, 367 Pa. 403, 410, 80 A. 2d 708 (1951).

At appellant's trial, the principal witness for the Commonwealth was one Arthur Dwyer. The facts of the case as testified to by Dwyer are as follows:

Appellant, whom Dwyer had never met before, came to Dwyer's home with a woman whom he introduced as his wife on the Monday preceding the Thursday on which the burglary was committed. Although he was in financial difficulties and his quarters were small, Dwyer permitted the appellant and his female companion to stay with him and his wife Monday night. The following day Dwyer located a place for them to stay with a friend of his, and helped them move to the friend's apartment. He did not see appellant again until 12:30 a.m. on Friday following the evening during which the burglary was committed. When appellant and his female companion arrived at Dwyer's home early Friday morning, appellant was carrying a suitcase, a radio, an iron and an electric clock. Immediately upon arriving, appellant stated to Dwyer, "I think we hit the jackpot." The witness and appellant then proceeded to examine the contents of the suitcase; it contained money, jewelry and securities which had been stolen in the burglary. Appellant gave Dwyer $300.00 of the stolen money and left with him all of the jewelry. From the door of his home, the

witness watched appellant dispose of the suitcase and the strongbox which had contained the securities, after which they congenially drank beer together.

In reciting these facts, the witness expressed no surprise at seeing appellant on the doorstep in the middle of the night laden with stolen property. Although he stated that he had originally refused to take the money, he subsequently accepted it and used it to pay off some of his obligations.

Appellant contends that the above facts demonstrate that Dwyer was in fact an accomplice; on the basis of these facts, appellant's counsel requested the trial court to instruct the jury that Dwyer was an accomplice and that Dwyer's testimony, coming from a corrupt source, should be given careful scrutiny.[1]

---

[1] The requested points for charge were as follows:

"1. The main witness for the prosecution is the actual perpetrator of the crime and as such is an accomplice, conspirator and/or co-defendant along with Francis Sisak.

"2. See Comm. vs. Darnall, 179 Pa. Superior 461, and as such, his uncorroborated testimony should be criticized and looked at from every angle. You are to test the question of its truth or falsity by every test which occurs to you. Freedom vs. U.S., 274 Fed. 603 and see also, Comm. vs. Howe, 84 Pa. Super. 295.

"3. The testimony comes from a tainted source and while you are considering it, remember from what kind of witness the testimony comes. Freedman vs. U.S., 274 Fed. 603. See also Comm. vs. Cunningham, 161 Pa. Super. 276.

"4. You should give far greater care and scrunity [sic] to the tainted testimony of the accomplice in light of testimony exculpating the defendant from witnesses of unsullied reputation. Arnold vs. U.S., 94 Fed. 2d 499.

"5. You, the Jury, are alone, the finders of fact and must determine whether on the basis of the aforementioned tests, the uncorroborated testimony of the alleged accomplice is credible and, in addition, even finding it credible, you are cautioned against putting too much reliance on the testimony of the accomplice. See Comm. vs. Howe, 84 Pa. Super. 295; see also Comm. vs. Elliott, 292 Pa. 16.

The trial court, after hearing this testimony, concluded that the facts were clear and that this witness was not an accomplice. Accordingly, it refused to give the requested charge.[2] In so doing, the court relied upon the general rule that "when the facts with respect to the participation of a witness in the crime for which the defendant is on trial are clear and undisputed, it is for the court to determine whether or not he was an accomplice, but where the facts are in dispute, or different inferences might reasonably be drawn therefrom, the question whether or not a witness was an accomplice is for the jury." *Commonwealth v. Brown,* 116 Pa. Superior Ct. 1, 12, 175 Atl. 748 (1934); *Commonwealth v. Kayfield,* 40 Pa. D. & C. 2d 689 (Q.S. Luzerne Co., 1965).[3]

While we accept this rule, we cannot agree that the only reasonable inference which can be drawn from the above facts is that the witness was not an accomplice. As we view them, the facts support an inference that Dwyer participated with appellant in planning and arranging for the burglary in advance of its commission. If he did so participate, then, of course, Dwyer would have been an accessory before the fact. See *Common-*

---

"You are again reminded that the testimony of the alleged accomplice is from a corrupt source. See Comm. vs. Olitzky, 184 Pa. Super. 144."

[2] The court's view on this issue is set forth in its opinion on the motion for a new trial.

[3] The Commonwealth advances, as a ground for affirmance, defense counsel's minor deviation from the local court rule. The deviation occurred when defense counsel, unfamiliar with the local rules, submitted his points for charge after the closing arguments, rather than before. The trial court, however, was evidently willing to relax its rule in this instance, for it did not mention this deviation as a reason for refusing the points for charge. While the rule is a salutary one, it is primarily for the benefit of the court itself, and relaxation of the rule was well within its discretion. The Commonwealth was not prejudiced thereby and we are not willing to rest an affirmance on that ground.

*wealth v. Finkelstein*, 191 Pa. Superior Ct. 328, 156 A. 2d 888 (1959) and *Commonwealth v. Darnell*, 179 Pa. Superior Ct. 461, 116 A. 2d 310 (1955).

The Penal Code specifically provides that, "Every . . . accessory before the fact, to any felony . . . may be indicted, tried, convicted, and if no punishment is provided, may be punished in all respects as if he were the principal felon." Act of June 24, 1939, P. L. 872, §1105, 18 P.S. §5105. The general rule for determining whether a witness is an accomplice is "whether or not he could be indicted for the crime for which the accused is charged." *Commonwealth v. Hopkins*, 165 Pa. Superior Ct. 561, 564, 69 A. 2d 428 (1949). Consequently, an accessory before the fact is by definition an accomplice.[4] If in the present case the facts could support a reasonable inference that Dwyer was an accessory before the fact, they must necessarily support an inference that he was an accomplice within the meaning of the corrupt source rule in *Commonwealth v. Turner, supra.*

We do not hold that the facts require the inference that Dwyer was an accomplice, but only that such an inference was permissible. Therefore, under the rule set forth in *Brown, supra*, it was for the jury to determine whether Dwyer was an accomplice and to weigh his testimony in the light of that determination and appropriate instructions from the court. The possibility of such deliberations was foreclosed by the court's failure to instruct the jury that they might find Dwyer an accomplice whose testimony was subject to the corrupt source rule.

---

[4] To the same effect, see *Commonwealth v. Jones*, 213 Pa. Superior Ct. 504, 508, 247 A. 2d 624 (1968). "[A]n accomplice is one who 'knowingly and voluntarily cooperates with or aids another in the commission of a crime.'" See also *Commonwealth v. Hurt*, 163 Pa. Superior Ct. 232, 60 A. 2d 828 (1948).

The dissenting opinion concedes that in the present case the court's failure so to charge was error. It concludes, however, that that error cannot now be considered because no exception was taken to the court's charge by defense counsel and because, in the view of the minority, the error was not basic and fundamental.

The special-exception rule, as has so often been stated, is designed to prevent a party from sitting silently by, taking his chances on a favorable verdict, and then, in the event of an unfavorable verdict, complaining of matters which could have been corrected at trial had they been brought to the attention of the court in a timely fashion. See, e.g.: *Commonwealth v. Williams,* 432 Pa. 557, 248 A. 2d 301 (1968) ; *Segriff v. Johnston,* 402 Pa. 109, 166 A. 2d 496 (1960). In the present case, however, appellant's counsel did not remain silent and await the verdict. Rather, he requested five points for charge addressed to the accomplice rule. Each of these points was refused, and defendant was granted an exception.[5] The formal submission of requested points

---

[5] The general rule that the trial court need not remold incorrect points for charge is not applicable in this case. Defendant's requested points were in part erroneous, since they would have taken from the jury the question of whether Dwyer was an accomplice. That error was not adverted to by the trial court, however, and, as noted above, the court's refusal to give the requested points was based on its erroneous conclusion that Dwyer could not be found an accomplice under the facts presented.

Moreover, we note that the rule as to the remolding of points for charge appears to have originated in the case of *Commonwealth v. Girardot,* 107 Pa. Superior Ct. 274, 163 Atl. 362 (1932). There, the point refused was said to be too broad in that it requested the jury to consider any Commonwealth witness whom they found to have been an accomplice as a "self-confessed criminal." The Superior Court, in upholding the refusal of this requested point, stated (at 276-7) : "The charge of the court and the answers to other points . . . were such as to leave no doubt in the minds of the jury as to the caution, careful scrutiny and critical examination which should be given by them in considering the testimony of

for charge serves the same function as a request for additional or different instructions at the close of the court's charge. Both procedures present the issue to the trial judge. Both enable the court to avoid error by charging on the issue presented. In the case at bar, it would serve no useful purpose to require the defendant to request additional instructions on the accomplice rule since the court had already rejected points for charge because of its belief that as a matter of law Dwyer was not an accomplice.

We hold, accordingly, that under these circumstances the failure of the trial court to instruct the jury on the accomplice rule was error. Because the jurors might well have concluded, under proper instructions, that Dwyer was an accomplice whose testimony was of little value, the error was prejudicial to appellant. In this view of the case we are not called upon to consider, as we would have been had appellant remained silent, whether or not the error of the court was "basic and fundamental."

The order of the Superior Court and the judgment of the Court of Oyer and Terminer are reversed, and a new trial is granted.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice EAGEN dissents.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent and would affirm the decision of the Court below.

---

accomplices, and the corrupt source from which it came. *The court is only required to answer the points as submitted. It is not its duty to remold them; and when the law has been correctly stated in the charge and answers to the points presented, the defendant has no just cause for complaint.*" (Emphasis supplied) The implication of this holding is that a party whose requested point, although erroneous, alerts the trial judge to an important issue in the case, does have just cause for complaint if the law to which that point pertains is not otherwise correctly stated in the charge.

Defendant was convicted of burglary and larceny of money, a watch, jewelry, stocks and bonds, and other property of Miss Harriet Fisher.

The Majority, *ignoring a dozen recent decisions of this Court which control this case,* have invented a new test for granting a new trial to an undoubtedly guilty criminal—defendant had "alerted" the Court to its duty to charge on the weight to be given to the testimony of an accomplice, or an alleged accessory after the facts. The Majority grant a new trial to this undoubtedly guilty criminal even though his attorney, although asked by the Court, had not requested such a charge and had not taken a special exception to the Court's charge. Moreover, the Majority grant a new trial without relying on basic and fundamental error—of which there was none—and even though, *under the factual evidence in this case,* the charge as to the weight to be given the testimony of a possible accomplice or an accessory after the fact was entirely *unnecessary.*

Defendant presented five points for charge, each of which contained an incorrect statement of fact or law, and, as the Majority admit, was properly refused. It is well settled that where a point for charge contains correct law and incorrect law, a Court is not bound to remold the point and separate the good from the bad, the wheat from the chaff, and affirm that portion of the point which is an accurate statement of the law: *Commonwealth v. Kloiber,* 378 Pa. 412,* 422, 106 A. 2d 820, cert. den., 348 U.S. 875; *Commonwealth v. Clanton,* 395 Pa. 521,* 526, 151 A. 2d 88; *Commonwealth v. Wilcox,* 316 Pa. 129, 136, 173 Atl. 653. Since the lower Court is not required to accept and give a requested point for charge if it is inaccurate, it is erroneous to conclude, as the Majority does, that this

---

* Only Justice Musmanno dissented.

places a duty on the lower Court, sua sponte, to affirm or give in its charge that portion of the request which accurately states the law.

Moreover, there is an additional and very important controlling principle of law *which is completely ignored by the Majority and precludes a reversal.* At the conclusion of the Court's charge to the jury, defendant's counsel was asked by the Court whether there were any additional matters to charge upon, or any corrections desired, and no request for an additional or corrected charge was made by defendant. The trial Judge at the close of his charge specifically said to both counsel: ". . . then, gentlemen, before I ask for exception, or for a resume, are there *any additional matters** you would like me to charge upon *or any corrections at all,* gentlemen, Mr. Kane first? Mr. Kane: None. By the Court: Mr. Gorham? Mr. Gorham: No, sir. By the Court: . . . gentlemen, exceptions to the charge, please? Mr. Kane? Mr. Kane: I have none your honor. By the Court: Mr. Gorham? Mr. Gorham: Just a general exception. By the Court: Very well. Anything further? Mr. Gorham: No, your honor."

Where counsel for defendant fails to ask further or fuller instructions or for corrections in the charge of the Court, although opportunity is given him, *it is the well established general rule* that he cannot, on appeal, complain of error in the trial Judge's statement of facts or of law:** *Commonwealth v. Barnak,* 357 Pa. 391, 54

---

\* Italics throughout, ours, unless otherwise noted.

\*\* Justice Roberts, who concurs in the majority Opinion, has repeatedly approved the aforesaid general rule. See: *Commonwealth v. Simon,* 432 Pa. 386, 389, 390, 248 A. 2d 289, Opinion in support of Court's Order; *Lobalzo v. Varoli,* 422 Pa. 5, 7, 220 A. 2d 634, Concurring Opinion; *Commonwealth v. Williams,* 432 Pa. 557, supra, Dissenting Opinion; *Commonwealth v. Scoleri,* 432 Pa. 571, 582, 248 A. 2d 295, Concurring Opinion.

Moreover, Rule 1119 of the Pennsylvania Rules of Criminal Procedure succinctly expresses what was the long established gen-

A. 2d 865; *Commonwealth v. Holden,* 390 Pa. 221, 227, 134 A. 2d 868; *Commonwealth v. Williams,* 432 Pa. 557, 563, 248 A. 2d 301, and numerous decisions of this Court cited therein. This is so, even if he took a *general* exception thereto.

In *Commonwealth v. Williams,* 432 Pa., supra, the Court said (pages 563-564) : "The Commonwealth contends that appellant's failure to take an exception to the charge prevents our consideration of any errors therein. Because of fairness to all the parties to the litigation and the speedy administration of trials and of Court business, it is a well established *general rule\** that an appellate Court will not reverse (1) on a point (a) *where no exception was taken\** by appellant (Commonwealth v. Stowers, 363 Pa. 435, 437, 70 A. 2d 226; Commonwealth v. O'Brien, 312 Pa. 543, 168 Atl. 244; Commonwealth v. Donough, 377 Pa., supra (page 53)) ; Leech v. Jones, 421 Pa. 1, 2, 218 A. 2d 722; Millili v. Alan Wood, 418 Pa. 154, 156, 162, 166, 209 A. 2d 817; Patterson v. Pittsburgh Railways Co., 322 Pa. 125, 185 Atl. 283; Commonwealth v. Scott, 284 Pa. 159, 162, 130 Atl. 317) ; or (b) to which *only a general exception was taken\** (Commonwealth v. Smith, 374 Pa. 220, 225, 97 A. 2d 25; Enfield v. Stout, 400 Pa. 6, 14, 161 A. 2d 22; Spitzer v. P.T.C., 348 Pa. 548, 550, 36 A. 2d 503; Ellsworth v. Lauth, 311 Pa. 286, 290, 166 Atl. 855; Medvidovich v. Schultz, 309 Pa. 450, 453, 164 Atl. 338; . . ."

However, there is a well recognized exception to this Rule which the Majority do not rely on or discuss, but which I believe should be carefully considered and

---

eral law: "No portions of the charge nor omissions therefrom may be assigned as error unless *specific* objections are made thereto before the jury retires to deliberate." See, also, Pa. R. C. P. 227(b) ; Fed. R. C. P. 51. These rules also have provisions to the same effect which limit the effectiveness of a general exception.

\* Italics in *Commonwealth v. Williams* Opinion.

274

held to be inapplicable to and uncontrolling the facts in this case. This exception is thus expressed in *Commonwealth v. Williams,* 432 Pa., supra (pages 563-564): *"However, this general rule will not be applied*** where there is *basic and fundamental error which affects the merits or justice of the case,*** . . . [Citing 6 U. S. Supreme Court decisions and 14 decisions of the Supreme Court of Pennsylvania]." Accord: *Jackson v. Denno,* 378 U.S. 368; *Douglas v. California,* 372 U.S. 353.

As so aptly stated in *Segriff v. Johnston,* 402 Pa. 109, 113, 166 A. 2d 496: ". . . the trial Judge called both counsel to side bar following his charge and asked 'Now, does counsel for either party have any suggestions, additions, or corrections, amplifications?' Counsel had none.

". . . 'a party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matters which, if error, could have been eradicated during the trial if brought to the court's attention *properly and timely.* Keefer v. Byers, [398 Pa. 447, 159 A. 2d 477]; Commonwealth v. Razmus, 210 Pa. 609, 611, 60 A. 264.' Bell v. Yellow Cab Co., 399 Pa. 332, 338-39, 160 A. 2d 437. 'A proper administration of justice requires that new trials be not granted on errors which counsel had ample opportunity to correct. It is only when errors are basic and fundamental and cannot be corrected at the trial that this Court will consider them under a general exception: Medvidovich v. Schultz, 309 Pa. 450; Whitton v. H. A. Gable Co., 331 Pa. 429.' McDonald v. Ferrebee, 366 Pa. 543, 547, 79 A. 2d 232." Also, *Commonwealth v. Williams,* 432 Pa., supra, and *Commonwealth v. Stowers,* 363 Pa. 435, 70 A. 2d 226.

---

\* Italics in *Commonwealth v. Williams* Opinion.

\** Italics, ours.

In the light of the above-mentioned authorities setting forth the *general law,* as well as the exception, namely, *basic and fundamental error which affects the merits and Justice of the case,* we shall review and analyze *all the testimony* and the record in this case. This, we repeat, the Majority have unwisely or blindly failed to do.

Miss Harriet Fisher's home was burglarized and she testified as to the personal property which was stolen and which will be hereinafter referred to. Mrs. Mary Makowski, who lived next door to Miss Fisher's house, testified that on the night before the burglary the defendant came and knocked at her front door and asked her where Miss Fisher lived. She told him that Miss Fisher lived next door, and, in reply to his question, said she thought Miss Fisher was not at home. He then asked her if she knew when Miss Fisher would be home and she said she had no idea where she went or when she would be home.

Two witnesses, Joseph A. Cook and John Shupshinskas, each of whom was a proprietor of a restaurant within a block of the home of Miss Harriet Fisher (who was burglarized), testified that the defendant had been in their respective restaurants on the evening of the burglary and *each made a positive identification* of the defendant at his trial. Shupshinskas testified that the defendant entered his cafe around 11:00 or 11:30 with *"a large suitcase."* Shupshinskas then testified that he called a cab for the defendant, at his request, and defendant *left the cafe with the suitcase.*

A cab driver, Carl Compton, *identified the defendant* as the man at Shupshinskas' cafe and *testified that defendant was carrying "a large suitcase and a package wrapped in a turkish towel" when he got into his cab.* Compton further testified that he drove defendant to an apartment in Ashley and picked up a lady who was "cross-eyed." He then took defendant and the woman

to "59 Bowman Street in East End" (which was the residence of the Dwyers), where defendant and the woman left the cab with the above-mentioned suitcase and package.

Dwyer, defendant's alleged accomplice, testified as follows:

Defendant-appellant, whom Dwyer had never met before, came to Dwyer's home with a (cross-eyed) woman whom he introduced as his wife on the Monday preceding the Thursday on which the burglary was committed. Dwyer's wife had met defendant the night before while baby-sitting. Although he was in financial difficulties and his quarters were small, Dwyer permitted defendant and his female companion (whom he called his wife) to stay with him and his wife Monday night. The following day Dwyer located a place for them to stay with a friend of his, and helped them move to the friend's apartment. He did not see defendant again until 12:30 A.M. on Friday morning following the evening during which the burglary was committed. When defendant and his female companion arrived at Dwyer's home early Friday morning, defendant was carrying a suitcase, a radio wrapped in a towel, an iron and an electric clock. Immediately upon arriving, defendant said to Dwyer, "I think we hit the jackpot." Dwyer and defendant then proceeded to examine the contents of the suitcase; it contained money, jewelry and securities which had been stolen in the burglary. Defendant gave Dwyer $300 of the stolen money and left with him all of the jewelry. *Dwyer admitted he had been previously convicted of robbery and larceny.* Although Dwyer testified that he had originally refused to take the money, he quickly changed his mind and accepted it and used it to pay off some of his obligations. From the door of his home, Dwyer watched defendant throw the suitcase and the strongbox (both of which were Miss Fisher's) which

had contained the securities into an empty railroad boxcar across the street, after which they congenially drank beer together. Dwyer further testified that defendant came to see him next day and told him he had to get out of town, so Dwyer drove him to several places to find a motel where defendant and his alleged wife could spend the night in order to aid defendant's escape.

Mrs. Dwyer testified that the defendant and a woman who was "cross-eyed" entered their home on Friday morning about 12:30 A.M. She testified that defendant entered with a "suitcase . . . a radio and an iron and binoculars." Defendant and his (alleged) wife then opened the suitcase in the presence of both Mr. and Mrs. Dwyer. Mrs. Dwyer further testified: "Q. And did you see the Defendant open up the suitcase? A. Yes. Q. And were the contents examined in your presence? A. Yes. Q. Now, did you see any name on any of the bonds and other papers in the suitcase? A. There was one bond that I seen that had *Miss Harriet or Frank Fisher.*" She also saw a woman's watch, which was later identified as Miss Fisher's, and there were a lot of other things, such as papers, bonds and jewelry. *When defendant left, she watched him go across the street and throw this suitcase and a strongbox into a railroad boxcar,* which was right across the street. Defendant put the jewelry on a television set, where it remained until the next night when the police came, and she gave the jewelry to the police. In several other material matters Mrs. Dwyer's testimony corroborated that of her (alleged common-law) husband.*

---

* Defendant testified in his own behalf that on the night of the burglary he was at the home of Sammy Capitano, but Capitano was unable to say when defendant left on the night of the burglary, for he was not at his apartment. Defendant then denied the burglary and larceny and particularly testified that he had never seen

Furthermore, two State policemen, Trooper Dorris and Trooper Brennan, testified that after they had arrested the defendant in Chester, Pennsylvania, and advised him of his Constitutional rights pursuant to such arrest, the defendant made a significant spontaneous exclamation. Officer Dorris, who was seated next to the defendant in the rear seat of a patrol car en route back to Wilkes-Barre, testified: "Q. Now, while you were driving along were you and Officer Brennan engaged in a conversation? A. We were. Q. Was the Defendant participating in this conversation at all? A. No, we thought the Defendant was asleep, at that particular time. Q. All right, now, as you drove along what if anything did the Defendant say? A. Approximately two-thirty a.m., near the Quakertown Interchange, in the Turnpike, Defendant made a spontaneous remark, he said, *'Sure I took those bonds but you'll have a hell of a time getting them or proving it.'* "*

*Dwyer's testimony and his admissions both as to his prior criminal record* and his assistance to the defendant before and after defendant's burglary and larceny, as well as his participation with defendant in the fruits of the crime, clearly showed the jury—without any admonition from the Court—(1) the kind of a man he was and (2) that his testimony must be carefully scrutinized** and accepted with caution. Even so, and although not requested by the attorney for the defendant, the Judge should have so charged the jury.

the jewelry, bonds or stocks. Defendant did not produce any witnesses or other evidence to substantiate his denial of the Commonwealth's evidence.

* The lower Court held a preliminary hearing on the voluntariness of the statement, and determined it was a prima facie voluntary statement. There was no objection on the part of defense counsel to this determination, nor has there been any objection made to it before this Court on appeal.

** Strange to say, one reading Dwyer's testimony is impressed with his frankness and truthfulness.

Nevertheless, there is still overwhelming evidence to establish defendant's guilt beyond a reasonable doubt, namely, the testimony of Cook and Shupshinskas, the restaurant owners, Compton the cab driver, Mrs. Dwyer, Trooper Dorris and Trooper Brennan, and defendant's volunteered oral admission of guilt. It is crystal clear that the Court's failure under the facts and testimony in this case to instruct the jury as to the caution *to be given Dwyer's testimony*—especially when not requested to do so by defendant—*did not amount to basic and fundamental error or deprive this guilty defendant of Justice.*

In the tidal wave of crime which is sweeping and terrorizing our Country, it has been too often forgotten that Justice is not a one-way street—one-way for the criminal only—but a two-way street in which the rights and the protection and safety of the public are, or at least should be equal to those of a person accused or guilty of crime.

For the aforesaid reasons, I dissent and would affirm the judgment of sentence.