J-S89030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL JAMES | |
| Appellant | No. 142 EDA 2016 |

Appeal from the PCRA Order December 10, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0200501-2001
CP-51-CR-0200511-2001

BEFORE: SHOGAN, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED MARCH 15, 2017**

Michael James appeals from the December 10, 2015 order of the Philadelphia County Court of Common Pleas denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The trial court set forth the factual history of this case as follows:

> At approximately 2:00 a.m., on October 26, 2000, Dai Yun Zheng [] and his father Sin Tang Zheng [] were closing their restaurant located at 3621 North 22nd Street in the City and County of Philadelphia, Pennsylvania, when they were approached by Michael James . . . , Steven James, and Dennis Wright. Sin Tang Zheng recognized these men as customers who frequently came into his store. [James], Wright, and Steven James in concert muscled their way into the Zheng family restaurant. Sin Tang Zheng noticed

_____

[*] Former Justice specially assigned to the Superior Court.

that the co-defendant, Steven James, had a gun. After pushing their way into the store, [James] and his cohorts ultimately forced the Zhengs into the basement where they were beaten and tied up. The three men repeatedly went throughout the property to look for money and continuously asked the Zhengs about the location of the money. The entire ordeal lasted approximately fifty (50) minutes. Although [James] and his cohorts finally found the money, Dai Yun Zheng (the son) was fatally shot and killed. Sin Tang Zheng (the father) suffered a critical wound to his head. After the shooting, [James] and his cohorts fled the restaurant. Sin Tang Zheng crawl[ed] upstairs to telephone the police, however, for fear that he would not articulate the information correctly because of his wounds, and his limited English, he called a friend and told the friend to call the police. Sin Tang Zheng passed out before the police arrived. Upon the arrival of the police, he was transported to Temple University Hospital[.] Dai Yun Zheng was found dead at the scene from the fatal wound to the head. A couple of days later, officers of the Philadelphia Police Department went to the hospital and showed Sin Tang Zheng a series of photo arrays which included the photos of [James], Dennis Wright, and Steven James. He positively identified all three men.

[James] filed several pre-trial motions to suppress including but not limited to identification, physical evidence, and statements all of which were denied. On October 22, 2003, a jury found [James] guilty of First Degree Murder, Attempted Murder, Robbery, Criminal Conspiracy to Robbery, and Possessing an Instrument of Crime.[1] The Commonwealth had previously filed notice of its intention to seek the death penalty. [James] successfully litigated a motion to quash the aggravators. Thereafter, [James] was sentenced to a mandatory period of life in prison without the possibility of parole and to consecutive terms of ten (10) years to twenty (20) years for Robbery, Conspiracy, and Attempted Murder and two and a half (2 ½) years to five (5) years on the PIC all consecutive to each other and to the life sentence

---

[1] 18 Pa.C.S. §§ 2502, 3701, 903, 907, respectively.

> imposed. Although appellate counsel was provided to Michael James, [James] sought leave and was granted permission to proceed *pro se*.

Tr. Ct. Op., 10/18/04, at 1-3 (footnotes and citations omitted).

On February 7, 2006, this Court affirmed James' judgment of sentence. On August 15, 2006, the Pennsylvania Supreme Court denied his petition for allowance of appeal. On September 8, 2006, James filed a PCRA petition and a motion to proceed *pro se*. Following an August 8, 2007 ***Grazier***[2] hearing, the PCRA court granted James' motion to proceed *pro se*. On December 22, 2008, the PCRA court dismissed James' PCRA petition without a hearing. On December 14, 2009, this Court affirmed the trial court's dismissal of James' claim that trial counsel was ineffective for failing to object to the admission of the .32-caliber handgun, but remanded for further proceedings as to James' remaining claims. We concluded that the PCRA court had erred in finding James' remaining ineffective assistance of counsel claims had been previously litigated.

On March 24, 2015, James filed an application for leave to file original process and a petition for writ of mandamus with the Pennsylvania Supreme Court. On May 12, 2015, the Supreme Court granted the application for leave and the petition for mandamus and ordered the common pleas court to adjudicate the PCRA petition.

_____

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

On December 10, 2015, the Honorable Lillian H. Ransom[3] filed an opinion in support of the dismissal of James' PCRA petition.[4]

James raises the following issues on appeal:

> I. DID THE COMMON PLEAS COURT ABUSE [ITS] DISCRETION BY DENYING [JAMES'] POST CONVICTION PETITION STATING THAT THE REASON FOR DENYING THE PCRA PETITION WAS THAT TRIAL COUNSEL WAS NOT INEFFECTIVE DURING THE APPELLANT'S TRIAL?
>
> II. DID THE COMMON PLEAS COURT ERR[] WHEN IT DELAYED FOR OVER FIVE YEARS FROM THE DATE THE SUPERIOR COURT REMANDED THIS CASE BACK TO THE COMMON PLEAS COURT FOR ADJUDICATION OF THE I.A.C. CLAIMS RAISED BY THE APPELLANT?
>
> III. DID THE COMMON PLEAS COURT ABUSE [ITS] DISCRETION AND ERR BY NOT CONDUCTING AN EVIDENTIARY HEARING ?

James' Brief at 2.

## I.   Ineffective Assistance of Counsel

In his first issue, James maintains the PCRA court erred when it dismissed the ineffective assistance of counsel claims raised in his PCRA petition.   James argues his trial counsel was ineffective for failing to: (1) object to the trial court's response to the jury's question regarding the first-degree murder elements; (2) object to the trial court's instruction on

---

[3] Judge Ransom was sworn in as a member of this Court in August 2016, following her appointment to the Court in June 2016. Judge Ransom was not involved in the review of this appeal.

[4] The Honorable Renee Cardwell Hughes presided over the trial, but retired prior to the issuance of the December 10, 2015 Rule 1925(a) opinion.

accomplice testimony; (3) object to the admission of Sin Tang Zheng's prior consistent statement; (4) call James' grandfather as a witness; (5) object to the admission of rap lyrics; (6) investigate an alibi defense; (7) file a motion to sever; (8) object to the assistant district attorney's reference to Joyce Wu, M.D. during closing argument; (9) object to the assistant district attorney's opening statement; (10) object to the assistant district attorney's closing argument; (11) investigate the promises made to Garfield Adams in exchange for his testimony against James; (12) investigate potential witnesses and DNA evidence; (13) object when the assistant district attorney struck young African Americans from the jury; (14) request a mistrial after Steven James caused a scene in the courtroom; and (15) object and request a mistrial when the assistant district attorney referenced Islam and Allah.[5]

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the

---

[5] James raised four additional ineffectiveness claims. However, on appeal, he concedes that, in our December 14, 2009 memorandum, this Court found that the PCRA court did not err in dismissing James' ineffective assistance of counsel claim for failure to object to the introduction of the .32-caliber revolver. James' Br. at 9; Memorandum, 116 EDA 2009, at 8-10 (Pa.Super. filed Dec. 14, 2009). Further, on appeal, he abandoned his counsel ineffectiveness claims for failing to (1) object to a reference to the assistant district attorney's wife; (2) object to a jury instruction regarding Adams' testimony; and (3) request that the trial be transferred due to media exposure. James' Br. at 28-29, 32.

evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011).

For ineffective assistance of counsel claims, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quoting ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa.2010)). "To demonstrate prejudice, the petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" ***Id.*** at 312 (quoting ***Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012)). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." ***Ousley***, 21 A.3d at 1244 (quoting ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa.Super. 2010)). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." ***Id.*** (quoting ***Rivera***, 10 A.3d at 1279).

First, James argues that his counsel was ineffective for failing to object to the trial court's response to the jury's question regarding the elements of first-degree murder. James maintains that counsel should have objected when the trial court informed the jury, in response to a jury question, that the Commonwealth did not need to prove which defendant was the shooter.

After the trial court received a question from the jury, the following exchange occurred:

THE FOREPERSON: They think – they are trying to get the clarification of where the difference between the first and second.

THE COURT: Okay, Gentlemen, can you stipulate that I can answer that question?

MR. SAX: Absolutely.

MR. SIEGEL: Certainly.

MS. RUDENSTEIN: Yes.

THE COURT: All right, very good.

Murder in the first degree. We already know all murders involve malice. We already know that second degree murder means that there was a felony committed. In my case it is a robbery. And, that a murder occurred in the course of a robbery.

First degree murder is a murder in which there was a specific intent to kill.

Premeditation – and premeditation can be instantaneous. You can plan it for eight years. But, it is a premeditated decision, a specific intent to kill. Period. Okay.

I mean, that is the critical distinction. To find first degree murder, you must find that there was a specific intent to kill.

You may find the specific intent by direct evidence, by circumstantial evidence. You may infer specific intent from the use of a deadly weapon on a vital organ in the body.

In order – each one of these defendants is charged with murder in the first degree.

In order to find murder in the first degree, you have to examine each person and say: Did that person possess the specific intent to kill; yes or no?

Move to the next person. Did that person possess the specific intent to kill; yes or no?

Move to the third person: Did that person possess the specific intent to kill? All right.

. . .

> THE FOREPERSON: Another thing we have been discussing, does that mean we have to prove shooter?
>
> THE COURT: No.
>
> THE FOREPERSON: Okay.

N.T., 10/17/03, at 129-31.[6] The instructions and answers to the jury's question, read as a whole, accurately described the elements of first- and second-degree murder, including that, although the Commonwealth need not prove that James was the shooter, it had to establish that James had the specific intent to kill. Therefore, counsel cannot be found ineffective for failing to object. *See Commonwealth v. Speight*, 854 A.2d 450, 461 (Pa. 2004) (finding counsel not ineffective where the charge given, "[r]ead as a whole, . . . sufficiently instructed the jury regarding the requirement that an individual must have specific intent to kill in order to be found guilty of first degree murder as an accomplice"). Accordingly, we conclude the PCRA court's finding that James' ineffectiveness claim lacked merit is supported by the record and free of legal error.

James next argues that trial counsel was ineffective for failing to object to the trial court's instruction regarding accomplice liability. He claims the trial court should have instructed the jury that Garfield Adams

_____

[6] Further, the trial court gave proper instructions regarding first- and second-degree murder during the pre-deliberation jury instructions, and instructed the jury as to conspiracy and accomplice liability. N.T., 10/17/03, at 49-79.

was an accomplice and, therefore, his testimony was "from a polluted source, and suspect as to such testimony being reliable." James' Br. at 11.

The Pennsylvania Supreme Court has stated:

> As we explained in **Commonwealth v. Chmiel**, []639 A.2d 9, 13 ([Pa.] 1994), "in any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." **See also Commonwealth v. Collins**, [] 957 A.2d 237 ([Pa.] 2008). For an accomplice charge to be required, the facts need to permit an inference that the witness was an accomplice. **Chmiel**, 639 A.2d at 13; **Commonwealth v. Sisak**, [] 259 A.2d 428 ([Pa.] 1969). "If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony." **Chmiel**, 639 A.2d at 13; **Commonwealth v. Mouzon**, [] 318 A.2d 703 ([Pa.] 1974).

**Commonwealth v. Smith**, 17 A.3d 873, 906 (Pa. 2011).

The PCRA court concluded that this claim lacked merit because the trial court instructed the jury using the standard jury instruction regarding testimony from an accomplice and, therefore, there was no basis to support the ineffectiveness claim. Opinion, 12/10/15, at 3 ("1925(a) Op.").

The trial court provided the following jury instruction:

> When [a Commonwealth witness] was so involved in the crime charged that he was an accomplice, his testimony has to be judged by special precautionary rules.
>
> Experience shows that an accomplice, when caught, will often try to blame falsely the crime on someone else. He may testify falsely in hope of obtaining favorable treatment or for some corrupt or wicked motive.

On the other hand, an accomplice may be perfectly truthful.

The rules that I give you are to help you determine between a truthful accomplice and a false accomplice.

You must decide first whether Garfield Adams, Jr. was in fact an accomplice in the crimes charged. If, after considering all of the evidence, you find that he was an accomplice, then you must apply these special rules to his testimony.

But, if you determine that Garfield Adams, Jr. was not an accomplice in this matter, then you ignore these instructions.

Use this test to determine whether Garfield Adams, Jr. was an accomplice. An accomplice may be defined as a person who knowingly and voluntarily cooperates with or aids another in the commission of a crime.

Now, with respect to the special rules that apply to what we call accomplice testimony, first you should view the testimony of an accomplice with disfavor **because it comes from a corrupt and polluted source.**

Second, you should examine the testimony of the accomplice closely and accept it only with care and caution.

Third, you should consider whether the testimony of the accomplice is supported in whole or in part by other evidence.

Accomplice testimony is more dependable if it is supported by independent evidence.

However, even if there is no independent evidence supporting the testimony, you may still find the defendant guilty, solely on the basis of an accomplice's testimony, if, after using the special rules we have discussed, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.

N.T., 10/17/03, 39-42 (emphasis added). The trial court provided the

proper accomplice testimony instruction, including that the testimony is from

a corrupt and polluted source. Further, because there was evidence to support that Adams was an accomplice, **see e.g.**, N.T., 10/15/03, at 13 (Adams supplied gun to James), and to support that he was not an accomplice, **see, e.g.,** N.T., 10/16/03, at 14-22 (Adams told defendants he "wasn't with it," was not at the scene, and testified he did not know gun would be used in robbery), the trial court did not err when it permitted the jury to determine whether Garfield was an accomplice. **See Smith**, 17 A.3d at 906. Because the instruction was proper, counsel was not ineffective for failing to object to the instruction. Accordingly, the PCRA court did not err when it found this ineffectiveness claim lacked merit.

James next maintains counsel was ineffective for failing to object to the use of Sin Tang Zheng's prior consistent statement.

The PCRA Court found that this issue was raised and affirmed on direct appeal. 1925(a) Op. at 3. On direct appeal, this Court found James waived his claim that the trial court erred in permitting Officer Han-Chun Kuo to read Zheng's prior consistent statement into evidence. **Commonwealth v. James**, 61 EDA 2004, unpublished mem. at 13 (Pa.Super. filed Feb. 7, 2006) ("Direct Appeal Mem."). However, we also concluded that the prior consistent statement was admissible under Pennsylvania Rule of Evidence 613[7] to rehabilitate Zheng because counsel for co-defendant Wright

---

[7] Rule 613(c) provides:

*(Footnote Continued Next Page)*

- 11 -

previously cross-examined Zheng regarding the statement and Zheng was asked numerous questions regarding "his identification of the defendants and memory of events." *Id.* at 13 n.5.

Because the prior consistent statement was admissible, trial counsel cannot be ineffective for failing to object to its admission, and we conclude the PCRA court did not err in dismissing this claim.

James next alleges counsel was ineffective for failing to call his grandfather as a witness. He claims his grandfather would have testified that the .32-caliber revolver found in the residence was owned by his grandfather and in his grandfather's control.

The PCRA court found James' ineffectiveness claim lacked merit because he failed to establish the grandfather's testimony would have

---
*(Footnote Continued)* ————————————————

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.Evid. 613(c).

resulted in a different outcome. 1925(a) Op. at 3-4. The court reasoned that the jury may have used the proposed testimony, that is, that the revolver belonged to the grandfather and that James resided with the grandfather, to find James had access to the gun. *Id.* The PCRA court's conclusion that James failed to establish prejudice is supported by the record and free of legal error.

James next argues that trial counsel was ineffective for failing to object to the admission of rap lyrics. The PCRA court found that this Court reviewed and affirmed the admission of the lyrics. 1925(a) Op. at 4. On direct appeal, we found there was "sufficient circumstantial evidence to authenticate the rap lyrics as having been written by [James]." Direct Appeal Mem. at 22. This Court found that James waived any claim that the lyrics were inadmissible as irrelevant and prejudicial. To the extent James now argues his counsel should have objected based on the lyrics' relevance and prejudicial value, we conclude that claim lacks merit. The lyrics were relevant, as they discussed guns, fear of the police, and "skippin' countries."[8] N.T., 10/15/03, at 209-13. Further, the lyrics' probative value is not outweighed by the danger of unfair prejudice. *See* Pa.R.Evid. 403; *Commonwealth v. Flamer*, 53 A.3d 82, 89-90 (Pa.Super. 2012) (finding

_____

[8] After the crime, James fled to Canada. N.T., 10/10/03, at 230-37; N.T., 10/14/03, at 35-36, 48-54, 66-72.

probative rap lyrics should have been admitted because they were not prejudicial and noting "[s]tatements that are on balance prejudicial are statements that inflame the jury to decide the case on that evidence alone and not legal propositions"). Accordingly, because the underlying claim that the lyrics were inadmissible lacked merit, we conclude that James' ineffectiveness claim is meritless, and the PCRA court did not err in dismissing it.

James next argues counsel was ineffective for failing to investigate an alibi defense. He maintains that he had been in a fight on the night of the murder with an individual from Scranton and that the blood on his clothes was that individual's blood. He argues that if counsel had contacted the individual and had a DNA test performed, the test would have established James was not at the scene of the murder.

To establish counsel was ineffective for failing to interview a witness, a PCRA petitioner must show that:

> (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Pander*, 100 A.3d 626, 639 (Pa.Super. 2014); *Commonwealth v. Brown*, 767 A.2d 576, 581-82 (Pa.Super. 2001) (quoting *Commonwealth v. Fletcher*, 292, 750 A.2d 261, 275 (Pa. 2000)).

The PCRA court found that "other than making a bold assertion, [James] has failed to meet the bare minimum requirements needed to

establish that such a witness existed, that the witness had anything of substance about which to testify, that the witness was willing to testify on [James'] behalf or even that trial counsel knew of the existence of the witness." 1925(a) Op. at 4. The PCRA court noted that at trial, the Commonwealth and James stipulated that the blood found on James' clothing was not the blood of either victim.[9],[10] *Id.* at 4-5. The record supports the PCRA court's factual findings and its determination that trial counsel was not ineffective for failing to investigate the witness is free from legal error.

In his next ineffectiveness claim, James argues counsel was ineffective for failing to argue, in support of the motion for severance, that a joint trial would violate James' due process rights because the statement of Steven James would be admitted and no redaction could make the statement neutral.

The PCRA court found that counsel filed a motion to sever, which the trial court denied and this Court affirmed. 1925(a) Op. at 5. Further, this

_____

[9] DNA evidence potentially establishing the blood on James' clothes was that of the alibi witness would not preclude James' participation in the crime. The parties stipulated that the blood was not the victims'.

[10] The PCRA court further noted that James asserted he knew the purported alibi witness because "they had previously engaged in transactions involving hot merchandise which was exchanged for cheap prices." 1925(a) Op. at 4. The PCRA court reasoned that, even if the alibi witness existed, the witness "may have had 5th Amendment concerns which may have precluded testimony." *Id.*

Court noted that the motion to sever argued that severance was proper because "Steve James' statement was prejudicial and not capable of redaction so as to prevent harmful inference." Direct Appeal Mem. at 17 n.7; *see* Motion to Sever, 5/1/01. Although the motion did not use the term "due process," the argument is the same in the motion and in James' PCRA petition – that James could not receive a fair trial because the redacted statement was unfairly prejudicial. Counsel cannot be ineffective for failing to raise an argument that he raised before the trial court. Accordingly, we conclude the PCRA court did not err in dismissing the claim.

James next argues that counsel was ineffective for failing to object to the assistant district attorney's reference to Joyce Wu, M.D., in the closing argument where Dr. Wu did not testify at trial.

The PCRA court found the ineffectiveness claim failed because this Court found on direct appeal that this issue was waived and, even if not waived, it lacked merit. 1925(a) Op. at 5. On appeal, we found any objection would have lacked merit because the Commonwealth was responding to arguments made by James and his co-defendant that the Commonwealth did not call certain witnesses. Direct Appeal Mem. at 23 n.8 (citing N.T., 10/16/03, at 93-94, 175, 232). This Court noted that the assistant district attorney "merely pointed out that the defense also had the right to subpoena witnesses, and if they wanted to hear her testimony, they should have called her." *Id.* (citing N.T., 10/16/03, at 232).

Because the assistant district attorney's reference to Dr. Wu was proper, we conclude that counsel was not ineffective for failing to object to the reference and that the PCRA court's determination to dismiss this claim was free of legal error.

In his next two ineffectiveness claims, James contends trial counsel was ineffective for failing to object to the assistant district attorney's opening statement and closing argument. He argues the opening statement was improper because the assistant district attorney referenced Steven James' redacted statement and said Steven stated that he and two others were involved. He also argues that the references to James' rap lyrics and to James' statement that "I shot them Chinese" during the closing argument were improper.

The PCRA court found that James' Rule 1925(b) statement was too vague regarding these claims and it, therefore, could not address them. 1925(a) Op. at 5-6. Neither James' PCRA petition nor his Rule 1925(b) statement include the specific references contained in the appellate brief and, therefore, James has waived his challenges to the opening statement and closing argument. **See Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa.Super. 2006) (finding claim waived where vague Rule 1925(b) statement hampered appellate review).

Further, even if James had not waived these challenges, we would conclude that they lack merit. This Court found on direct appeal that the trial court properly admitted the redacted statement. Direct Appeal Mem. at

16-20. Further, as discussed above, the trial court properly admitted the rap lyrics. In addition, the assistant district attorney properly referenced James' statement to Adams that he "shot the Chinese people," N.T., 10/15/03, at 27, which also was properly admitted. Accordingly, because the evidence properly was admitted at trial, the assistant district attorney's references to the evidence during his opening statement and closing argument were proper, and trial counsel was not ineffective for failing to object.

James next contends counsel was ineffective for failing to investigate the promises that the Commonwealth made to Garfield Adams in exchange for his testimony.

The PCRA court found this claim lacked merit because counsel questioned Adams about his agreement with the Commonwealth. 1925(a) Op. at 6. At trial, Adams testified regarding his agreement with the Commonwealth, including that he may receive a sentence of time served. N.T., 10/15/03, at 31. Further James' counsel cross-examined Adams regarding his guilty plea agreement and upcoming sentencing hearing. **_Id._** at 71-74. Accordingly, we conclude that the record supports the PCRA Court's findings, and its conclusion is free of legal error.

James next argues counsel was ineffective for failing to investigate potential witnesses and DNA evidence. James again argues counsel failed to interview the potential alibi witness from Scranton and failed to seek DNA testing of the alibi witness's blood. James further maintains that the alibi

witness could have provided contact information for an additional witness. As discussed above, the PCRA court's conclusion that counsel was not ineffective for failing to investigate the alibi witness is supported by the record and free of legal error.

James next contends counsel was ineffective for failing to object when the assistant district attorney improperly struck young African American males from the jury.

To state a **Batson**[11] claim in the context of an ineffective assistance of counsel claim, the appellant must "make an adequate record specifically identifying the race of all the venirepersons who had been removed by the prosecution, the race of the jurors who served, or the race of jurors acceptable to the Commonwealth who had been stricken by the defense." **Commonwealth v. Simpson**, 66 A.3d 253, 262 (Pa. 2013) (quoting **Commonwealth v. Spence**, 627 A.2d 1176, 1182-83 (Pa. 1993)).

The PCRA court found James failed to state a cognizable claim because "[t]here is no basis or documentation to support the allegation young African Americans were actually in the jury pool and there was nothing to support the claim that, if in the jury pool, members of this protected class were stricken in a racially discriminatory manner." 1925(a) Op. at 6-7. The PCRA Court concluded there was no support for the claim that trial counsel was

---

[11] **Batson v. Kentucky**, 476 U.S. 79 (1986).

ineffective.[12]  ***Id.*** at 7.  We conclude that the record supports the PCRA court's factual findings and its conclusion is free from legal error.

James next contends that counsel was ineffective for failing to seek a mistrial after Steven James caused a scene in the courtroom.

The PCRA court concluded:

> While it is true that one of the co-defendants (James) created a disturbance during the trial, the Court took a recess after excusing the jury from the room.  When the jury returned, the trial judge gave a strongly worded instruction to the jurors that they were to disregard the outburst by the co-defendant and not to hold that outburst against either of the co-defendants. The attorney for the co-defendant moved the Trial Court for a mistrial which was denied by that Court, in its discretion. ***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa.Super. 2008).  There would have been no merit for trial counsel to join in the motion for a mistrial, therefore this claim fails.

1925(a) Op. at 7-8 (internal citations to record omitted).  The record supports the PCRA court's factual findings and its conclusion that counsel was not ineffective is free of legal error.

James also contends counsel was ineffective for failing to object to the assistant district attorney's references to Islam and Allah.

The PCRA court found that James:

---

[12] Further, counsel objected at the time of jury selection, and the trial court overruled the objection.  N.T., 10/3/03, at 95-104 (co-defendant raised ***Batson*** objection, Commonwealth responded, and trial court found no violation); ***id.*** at 18 (trial court noted issues preserved during jury selection are relevant for each individual appeal).

> [F]ailed to provide specific cites to what he claims to be improper references to Islam and Allah during the trial. He has also failed to set forth any basis to support his assertion that this undeveloped claim resulted in any prejudice to him therefore, this Court is unable to formulate a response and deems the claim to be without merit.

1925(a) Op. at 8.[13]  The record supports the PCRA court's findings and its conclusions are free from legal error.

## II.  Delay

In his second issue, James maintains the PCRA court erred because it did not issue an opinion until more than five years after this Court remanded for further proceedings.  Although the PCRA court should have acted more quickly in addressing the PCRA petition following remand, the delay did not result in harm to James, and James is not entitled to relief.

## III.  PCRA Hearing

In his third issue, James argues the PCRA court erred in dismissing his petition without a hearing.

A PCRA court must hold a hearing only "where the petition, or the Commonwealth's answer, raises an issue of material fact." *Commonwealth v. Eichinger*, 108 A.3d 821, 849 (Pa. 2014).  "If a PCRA petitioner's offer of proof is insufficient to establish a *prima facie* case, or his allegations are

---

[13] In his brief, James states that the references to Islam and Allah were in his rap lyrics.  However, as discussed above, the rap lyrics were admissible.  Further, the references to Islam and Allah were not prejudicial, as they would not "inflame the jury to decide the case on that evidence alone and not legal propositions."  *See Flamer*, 53 A.3d at 89-90.

refuted by the existing record, an evidentiary hearing is unwarranted." ***Id.*** "A PCRA court's decision denying a claim without a hearing may only be reversed upon a finding of an abuse of discretion." ***Commonwealth v. Walker***, 36 A.3d 1, 17 (Pa. 2011).

Here, the trial counsel ineffectiveness claims raised in James' PCRA petition are refuted by the existing record. Accordingly, the PCRA court did not abuse its discretion by dismissing of the claims without a hearing. ***See Eichinger***, 108 A.3d at 849.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2017